58 CCPA

**TANNERS' COUNCIL OF AMERICA, INC., Appellant,**

v.

**GARY INDUSTRIES, INC., d.b.a. ACCO Products, Appellee.**

**Patent Appeal No. 8485.**

United States Court of Customs and Patent Appeals.

May 13, 1971.

Kaye, Scholer, Fierman, Hays & Handler, David Goldberg, New York City, attorneys of record, for appellant.

Elmer L. Zwickel, Chicago, Ill., for appellee.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

Tanners' Council of America, Inc. appeals from the decision of the Trademark Trial and Appeal Board rendered July 23, 1968, 158 USPQ 669, dismissing appellant's opposition to the registration of the term ACCOHIDE as a trademark for loose-leaf binders. The applicant for registration moved to dismiss the opposition on the ground that opposer is a mere trade association having no business in or product on which the involved trademark can be or is used and that it cannot be damaged by registration of the trademark ACCOHIDE by applicant. We reverse and remand.

The Tanners' Council is and has been for many years a trade association in the leather and tanning industry. The members of the council are engaged in the business of producing leather by tanning the skins and hides of various animals and selling such leather throughout the United States to manufacturers of various articles including loose-leaf binders. Appellant asserts that one of its purposes is to protect its members against various abuses and asserts that the loose-leaf binders to which applicant applies the term ACCOHIDE are not made of leather but are made of a plastic processed to simulate leather. The record shows that the Tanners' Council collects dues from its members based on the semi-annual production of each member. A member's loss of sales decreases the dues received by appellant.

The Trademark Act of 1946 as amended, section 13, 15 U.S.C. § 1063, states that "Any person who believes that he would be damaged by the registration of a mark on the principal register may * * * file a verified opposition * * *." The board held that appellant trade association is not *per se* engaged in the marketing or sale of goods and that it has no standing to oppose, either on its own behalf or on behalf of its members, the registration of an assertedly deceptive or deceptively misdescriptive term. The sole issue before us, therefore, is whether the Tanners' Council qualifies under section 13 as an opposer.

■ The board, in concluding lack of standing, relied heavily upon this court's opinion in Pocahontas Operators Association v. Carter Coal Company, 160 F. 2d 114, 34 CCPA 926, 73 USPQ 51 (1947). In *Pocahontas*, this court held that an informal, unincorporated, nonprofit association of coal producers, which association did not mine or sell coal and did not own or have any control over any trademarks, had not established that it would be damaged by the registration of trademarks comprising essentially the term OLGA and the words "America's Largest-Selling Pocahontas" for use on so-called "Pocahontas Coal", and we concluded that the association had no legal standing to oppose on its own behalf or on behalf of its members. In the case now before us, the opposer is an incorporated organization which has established that its income is dependent upon the volume of the sales made by its members. It seems clear enough that registration of the mark as applied for could weaken the sales positions of appellants' members and hence reduce the income of appellant. We think this last factor is alone sufficient to bring appellant within the category of "any person who believes he would be damaged" by the registration. In Singer Manufacturing Co. v. Birginal-Bigsby Corp., 319 F.2d 273, 50 CCPA 1380, (1963), this court held that Singer had the right to oppose the registration of the mark AMERICAN BEAUTY for sewing machines made in Japan and sold in the United States. We said there that an opposition may be filed by anyone having a real interest, and we were not unduly concerned over just what the nature of the damage might be in the future from granting the registration. See also Golden Gate Salami Co. v. Gulf States Paper Corp., 332 F.2d 184, 51 CCPA 1391, (1964). Appellant's justifiable belief that it would be damaged by the registration of the mark ACCOHIDE is a real interest and more than the interest of a mere intermeddler.

Appellant also relies upon Mutation Mink Breeders Association v. Lou Nierenberg Corp., 23 F.R.D. 155, (S.D.N. Y.1959), wherein a trade association representing mink breeders was held to have standing to maintain an action charging that defendants' use of the term NORMINK in connection with synthetic mink garments constituted false representation. The district court there rejected defendants' argument that the Mink Breeders Association had no standing to sue, and held that the association had a pecuniary interest in preventing the diversion of trade from its members to the defendants, since in return for its services the association received a percentage of the sales price of the pelts sold by its members. It is most important to note that the court found that a sufficient cause of action had been stated and that the association had standing to bring it, under § 43(a) of the Lanham Act (15 USC 1125(a)), which provides for suit by "any person who believes that he is or is likely to be damaged by the use of any such false description or representation." The language is nearly identical to the § 13 language here in issue. If the district courts are to permit trade associations to sue under statutory provisions like § 43(a), no good purpose would be served by this court's preventing the issues from being raised earlier, in the Patent Office. The result would

be merely to delay the final resolution of the issues.

We note that the broad proposition that trade associations lack standing to oppose under § 13 unless they themselves deal in goods has been criticized by commentators. See, e.g., Derenberg, The Twenty-Third Year of Administration of the Lanham Trademark Act of 1946, pp. 27–28 (1970). Among other reasons for opposing this view, Professor Derenberg points out that such a view is out of line with the trend toward greater protection of consumer interest.

We further note that in other contexts the standing of trade associations to sue has been enlarged since our decision in *Pocahontas*. The Supreme Court of the United States recently held that a trade association had standing to sue and challenge a ruling of the Comptroller of the Currency. Association of Data Processing Service Organizations, Inc. v. Camp, Comptroller of the Currency, 397 U.S.

150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The Supreme Court stated:

Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved "persons" is symptomatic of that trend.

*Id.* at 154, 90 S.Ct. at 830.

■ In view of all the foregoing considerations, we are not inclined to preclude opposition by a trade association merely on the ground that it does not itself deal in goods. We accordingly hold that, at least where the association has established a pecuniary interest, as here, it has standing to oppose under § 13.

The decision of the board is reversed, and the case is remanded for consideration of appellant's contention that the mark is deceptive or deceptively misdescriptive.

Reversed and remanded.