**JEWELERS VIGILANCE COMMITTEE, INC., Appellant,**

v.

**ULLENBERG CORP., Appellee.**

**Appeal No. 86–1628.**

United States Court of Appeals, Federal Circuit.

June 9, 1987.

Roberta Jacobs-Meadway, Panitch Schwarze Jacobs and Nadel, of Philadelphia, Pennsylvania, argued, for appellant. With her on the brief, were William W. Schwarze and Helen H. Richardson.

Michael T. Platt, Berman, Aisenberg and Platt, of Washington, D.C., argued, for appellee. With him on the brief, was Samuel D. Littlepage.

Before SMITH, Circuit Judge, MILLER, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

This is an appeal from the order of the Trademark Trial and Appeal Board (Board) of the United States Patent and Trademark Office granting the motion for summary judgment filed by Ullenberg Corp. (Ullenberg) on the ground that Jewelers Vigilance Committee, Inc. (JVC) failed to plead sufficient facts to establish its standing to be heard in this opposition proceeding filed pursuant to 15 U.S.C. § 1063 (1982). We vacate and remand.

## BACKGROUND

JVC opposed the application by Ullenberg to register the following mark for "precious stones, namely diamonds," citing sections 2(a) and 2(d) of the Lanham Act, 15 U.S.C. § 1052(a), (d) (1982), and of which Ullenberg asserts use since 1974:

FOREVER YOURS DEBEERS DIA LTD.

JVC is a nonprofit trade association representing 2,500 firms in the United States, including suppliers, wholesalers, distributors and retailers of diamonds and diamond jewelry. The unchallenged organizational purpose of JVC is to protect public confidences in the jewelry industry, develop and maintain trade standards, and promote fair dealing in the jewelry industry. JVC is a voluntary membership organization financed by members' dues and contributions from members and nonmembers.

DeBeers Consolidated Mines Limited (DeBeers), a non-United States entity, allegedly controls approximately 85 percent of the rough gem diamonds that come to the market each year. JVC's members purchase diamonds that have come to the market through the DeBeers organization. DeBeers has promoted diamond jewelry generally for more than forty years. In 1948 DeBeers began using the slogan "A Diamond is Forever" which has been continuously used since 1948 in conjunction with the name of DeBeers to promote diamond jewelry. JVC's members and others in the trade use the name and slogan of DeBeers to promote diamond jewelry generally.

In answers to interrogatories, Ullenberg stated that it did not know whether its goods contained diamonds originating with DeBeers and that it had had no direct business dealing with DeBeers. Thus, its assertion of exclusive rights in the mark sought to be registered is based on its own use of the mark, not as a corporate affiliate or licensee of DeBeers.

JVC asserts that registration of the name DeBeers in Ullenberg's mark will cause damage to it and its members in the following ways:

1. Use of the mark by Ullenberg would erroneously lead purchasers to think that Ullenberg is associated with DeBeers or that the goods are sponsored by DeBeers. Any defect or fault found with Ullenberg's goods would necessarily reflect adversely upon, and seriously injure, the goodwill that has been established over many years as a result of the use of the name of DeBeers in association with the promotion of diamond jewelry generally.

2. If Ullenberg is granted the registration, it would thereby obtain a *prima facie* exclusive right to use such mark and such exclusive right would damage and injure JVC, its members and other jewelers who use the name DeBeers to promote diamond jewelry.

3. Loss of membership dues will result if JVC cannot oppose this registration because its members will have less confidence in JVC's ability to police unfair and deceptive practices in the industry.

### The Board's Decision

The Board determined that JVC failed to plead sufficient facts to establish its standing in this opposition proceeding. The Board held that because the opposition was based on section 2(a) and section 2(d) of the Lanham Act, 15 U.S.C. § 1052(a), (d),[1] an opposition cannot be sustained unless an opposer has a proprietary right in the mark which is the basis for the opposition. The

---

1. Section 2 provides:
   No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
   (a) Consists of or comprises immoral, deceptive, or scandalous matter ...
   ....

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

Board cited the decisions in *The University of Notre Dame Du Lac v. J.C. Gourmet Food Imports Co.*, 703 F.2d 1372, 217 USPQ 505 (Fed.Cir.1983) and *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981), in which oppositions were not sustained on the merits, to support its view that JVC had no standing because admittedly it has no proprietary rights in the name DeBeers. The Board acknowledged that a trade association's standing has been recognized in a number of cases, the most comparable being *Tanners' Council of America Inc. v. Gary Industries, Inc.*, 440 F.2d 1404, 169 USPQ 608 (CCPA 1971); *Mutation Mink Breeders Association v. Lou Nierenberg Corp.*, 23 F.R.D. 155, 120 USPQ 270 (S.D. N.Y.1959); and *The Scotch Whiskey Association v. Consolidated Distilled Products, Inc.*, 204 USPQ 57 (TTAB 1979). These decisions were distinguished on the basis that the oppositions therein were not grounded on section 2(a) or 2(d) as here, but on section 2(e) of the Lanham Act. 15 U.S.C. § 1052(e) (1982).[2] In those cases the associations were seeking to prevent the use or misuse of a term which was allegedly descriptive or misdescriptive in relation to the goods of the applicant.

## ISSUE

The issue presented in this appeal is whether JVC pleaded sufficient facts to establish its standing to be heard in this opposition proceeding.

## OPINION

■ Because the motion for summary judgment in this case was granted only upon the pleadings, it is in the nature of a motion to dismiss and we treat it as such. For purposes of ruling on a motion to dismiss for want of standing, both the Board and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *See Selva & Sons, Inc. v. Nina Footwear, Inc.*, 705

F.2d 1316, 1320, 217 USPQ 641, 644 (Fed. Cir.1983) ("the well-pleaded facts of a complaint are accepted as true for purposes of determining a motion to dismiss").

The Board, in effect, by requiring JVC to possess a proprietary interest in the name DeBeers in order to have the requisite standing to bring an opposition proceeding under sections 2(a) or 2(d), confused a merits determination—whether Ullenberg is entitled to registration of its mark—with a standing determination—whether JVC has a right to bring the opposition proceeding.

Under section 13 of the Lanham Act, "[a]ny person who believes that he would be *damaged by the registration of a mark* upon the principal register may ... file an opposition ... stating the grounds therefor." 15 U.S.C. § 1063 (1982) (emphasis added). Hence, an opposer's right—or standing—to bring an opposition proceeding flows from this section of the Act. While there is no definition of the section 13 word "damaged" appearing in the phrase "damaged by the registration of the mark," one of our predecessor courts has stated that "[t]he purpose in requiring standing is to prevent litigation where there is no real controversy between the parties, where a plaintiff, petitioner or opposer, is no more than an intermeddler." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029–30, 213 USPQ 185, 189 (CCPA 1982). Thus, the goal of section 13 is in harmony with the standing requirements for maintaining a law suit in an Article III court as succinctly stated in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), that the gist of the question of standing is whether plaintiff:

> alleged such *a personal stake in the outcome of the controversy* as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.

*Id.* at 204, 82 S.Ct. at 703 (emphasis added).

In *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1974), the

---

**2.** Section 2(e) provides that a trademark may not be registered if it "[c]onsists of a mark which, (1) when applied to the goods of the

applicant is merely descriptive or deceptively misdescriptive of them...."

Court in discussing the Article III constitutional dimension of standing stated that a federal court's jurisdiction can be invoked only when the complainant himself has suffered "some threatened or actual injury resulting from the putatively illegal action." As to the prudential limitation on standing, the Court held that, although the actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing, Congress may grant an express right of action to a person who otherwise would be barred by prudential standing rules. *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206.

Section 13 of the Lanham Act is such a statute. Of course, the constitutional requirement remains that the opposer "must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.... But so long as this requirement is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim." *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. Thus, it is in the pleading stage of the opposition proceeding that the opposer must plead facts sufficient only to show a personal interest in the outcome of the case beyond that of the general public. *Lipton,* at 1028, 213 USPQ at 188. Once standing is established, the opposer is entitled to rely on any of the grounds set forth in section 2 of the Lanham Act which negate applicant's right to its subject registration. *Id.* at 1031, 213 USPQ at 190; *citing Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

In the usual case where an opposition is brought under section 2(d), the opposer does have a proprietary interest in a mark, and standing is afforded through its assertion that it will incur some direct injury to its own established trade identity if an applicant's mark is registered. *See e.g. Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24 (CCPA 1976); *Universal Oil Prod. Co. v. Rexall Drug and Chem. Co.,* 463 F.2d 1122, 174 USPQ 458 (CCPA 1972). In such cases, standing is closely related to the *grounds* (the merits) upon which the opposer relies in asserting that the applicant is not entitled to register his mark. That they are distinct inquiries is obscured. On the other hand, the distinctness of the inquiries is readily apparent where an opposition is based on the descriptiveness of the mark sought to be registered, *i.e.,* an opposition based on section 2(e). An opposer in such case need only assert an equal right to use the mark for the goods. Proprietary rights in the opposer are not required. *Dewalt, Inc. v. Magna Power Tool Corp.,* 289 F.2d 656, 129 USPQ 275 (CCPA 1961). Similarly, one of our predecessor courts recognized that a parent corporation has standing to oppose on the basis of a mark owned and controlled by its subsidiary. *Universal Oil Prod. Co.,* 463 F.2d at 1124, 174 USPQ at 459. As that court noted, the Lanham Act "requires only a belief of damage resulting from the applicant's registration, and while that belief must have some reasonable basis in fact, this statutory provision ... has been liberally construed. Such a construction is especially justified when the public interest served by a trademark opposition proceeding is recognized." *Id.* at 1124, 174 USPQ at 459-60.

█ There is no question that a trade association, having a real interest in the outcome of the proceedings, may maintain an opposition without proprietary rights in a mark or without asserting that it has a right or has an interest in using the alleged mark sought to be registered by an applicant. *See Tanners' Council,* 440 F.2d 1404, 169 USPQ 608 (CCPA 1971); *The Scotch Whiskey Ass'n,* 204 USPQ 57 (TTAB 1979). This is true irrespective of the grounds upon which the opposer relies in asserting the nonregistrability of applicant's mark.

█ In this case, JVC must have alleged an adverse affect on its own interests *or* those of its members which will result from the issuance of the registration to Ullenberg. JVC has met that requirement. As

distributors of DeBeers' diamonds and users of that name to promote the sale of such goods, JVC's members have personal interests in continuing such use and in negating Ullenberg's assertion of exclusive rights in the mark DeBeers, which would be *prima facie* recognized by the grant of the registration which Ullenberg seeks. JVC as the watchdog for the industry has the same type of interest as the Scotch Whiskey Association in preventing the imprimatur of registration from being given to one assertedly engaged in deception of the public. These allegations demonstrate a real interest in the outcome of the proceeding based on a likelihood of confusion with the DeBeers' trade name. Thus JVC is more than a meddlesome party. *See Lipton,* 670 F.2d at 1027, 213 USPQ at 188; *Selva & Sons,* at 1325, 217 USPQ at 648. It need not have a proprietary interest in the mark on which the section 2(d) opposition is grounded. *Accord, Universal Oil Prod. Co. v. Rexall Drug and Chem. Co.,* 463 F.2d 1122, 174 USPQ 458 (CCPA 1972). As stated earlier, the Board in this case confused a merits determination (whether Ullenberg is entitled to registration of its mark) with a standing determination (whether JVC has a right to bring the opposition).

Ullenberg and the Board primarily rely on *Otto Roth,* a case that dealt with the merits of an opposition, not standing. The opposer in *Otto Roth* asserted as its *grounds* for unregistrability of the applicant's mark ESPRIT NOUVEAU for cheese, that there was a likelihood of confusion of source by reason of opposer's prior use of an allegedly similar mark, a section 2(d) claim. The opposer's mark was a descriptive term (BRIE NOUVEAU meaning "new brie" for cheese) as was determined by a prior denial of registration on the Principal Register. Without the establishment of secondary meaning (which opposer there did not attempt to prove), a descriptive term does not indicate source and, *a fortiori,* on the merits opposer failed to prove that purchasers would believe opposer was the source of applicant's goods. The opposer in *Otto Roth* did not fail because of lack of standing, which by implication was present, but on the merits.

Furthermore, the *Notre Dame* decision is not a standing case. There is no discussion in that case of whether a proprietary interest in a mark is required in order for an opposer to have standing to oppose. Rather, the court held that the fame of the University of Notre Dame was insufficient in itself to establish a false connection under section 2(a) or a likelihood of confusion under section 2(d) of the Lanham Act between the University and the source of NOTRE DAME cheese.

We need not decide if the alleged damage solely to JVC is sufficient to establish its standing as opposer since "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth,* 422 U.S. at 511, 95 S.Ct. at 2211. The test for associational standing has been reiterated by the Supreme Court in deciding whether a union had standing under the Trade Act of 1974 (19 U.S.C. §§ 2271–2321) to represent its members denied unemployment benefits under the Act. *UAW v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). The three-part test to determine whether an association has the requisite standing is:

"(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Id.* 106 S.Ct. at 2529 (quoting *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

Under the above test, we conclude that JVC in this case has standing to represent its members. First, since damage, personal to the members if registration is allowed, has been pled, JVC's members would have standing in their own right. Second, it is uncontested that the organizational purpose of JVC is to promote honest and fair commercial dealing in the jewelry industry—activities asserted to be disrupted if

Ullenberg's alleged mark is registered. Finally, neither the proceeding nor the relief sought—denial of the application—requires the actual participation of JVC's members in the proceeding. Once standing is established using this analysis, JVC has "standing to seek relief on the basis of the legal rights and interest of others." *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206; *see also Lipton*, 670 F.2d at 1031, 213 USPQ at 190.

### CONCLUSION

The Board's order granting summary judgment is vacated and the case is remanded to the Board for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**