THIS OPINION IS CITABLE
AS PRECEDENT OF
THE T.T.A.B.
13 JUN 2000

Hearing:
December 16, 1999

Paper No. 97
DEB

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

---

Trademark Trial and Appeal Board

---

Cerveceria Modelo, S.A. de C.V.
v.
R.B. Marco & Sons, Inc.

---

Cancellation No. 22,137

---

Joseph A. Yanny of Grieco & Yanny for Cerveceria Modelo, S.A. de C.V.

Malcolm E. Whittaker of Mineo & Whittaker for R.B. Marco & Sons, Inc.

---

Before Simms, Bucher and Bottorff, Administrative Trademark Judges.

Opinion by Bucher, Administrative Trademark Judge:

Cerveceria Modelo, S.A. de C.V. (petitioner), a Mexican corporation, has petitioned to cancel a registration owned by R.B. Marco & Sons, Inc. (respondent), a Florida corporation, for the mark CORONA (and crown design), as shown below, for "men's, women's and children's socks and stockings."



---

[1]    Registration No. 1,208,569 issued on September 14, 1982 from an application filed on May 11, 1981, which sets forth dates of first use of February 10, 1981; Section 8 affidavit accepted and Section 15 affidavit acknowledged.

In its cancellation petition, petitioner alleged that respondent " … is not currently using, and has therefore abandoned its mark in connection with the goods cited in its registration." *See* Lanham Act Sections 14 and 45, 15 U.S.C. §§1064 and 1127.

Respondent filed an answer that denied the pertinent allegations of the petition. In opposing Modelo's petition to cancel, Marco & Sons has argued vehemently that it has used this mark on socks continuously for almost twenty years and never had any intention of abandoning this mark.

This proceeding has involved a plethora of motions but a dearth of solid evidence. A quick review shows that the arduous history of this proceeding involves a great deal of rancor between the parties and hotly contested motions requiring numerous interlocutory decisions by this Board. Petitioner and respondent have filed briefs. On December 16, 1999 a hearing was held before this Board at which counsel for both parties were present.

## *Standing*

Modelo is the manufacturer and distributor of the well-known CORONA beer sold throughout the world for more than seventy years. In recent years, it has been one of the best selling brands of beer in the United States.[2] In the U.S.A.,

---

[2] Roberto Viejo, September 11, 1997, pp. 14-15.

2

Modelo's domestic subsidiary, Procermex, Inc., licenses Modelo's CORONA mark for a wide variety of collateral merchandise, and expends substantial sums of money on policing the use of its popular trademark on items of clothing. Since 1978, Modelo has forcefully extended its well-known trademark into the clothing market, and today is a model for others in the beer industry in handling successfully such a brand extension. Finally, Modelo has shown that it has had a number of its trademark applications refused registration in the U.S. Patent and Trademark Office on the basis of Marco & Sons' existing registration, including but not limited to the following pending applications for items of clothing:

  

This showing of Modelo's use of it "CORONA" marks and of the citation of Marco & Sons' registration as a bar to the registration of Modelo's marks is sufficient to establish

---

[3] Serial No. 74/337,257 filed on December 7, 1992, claiming dates of first use of April 1980. The English translation of the Spanish word "Corona" is "Crown."

[4] Serial No. 74/337,259 filed on December 7, 1992, claiming dates of first use of April 1980.

[5] Serial No. 74/337,256 filed on December 7, 1992, claiming dates of first use of April 1980. This special form drawing includes a fanciful design of a crown and two griffins - mythological creatures having a lion's body, eagle's head and wings, long ears, and an eagle's claws.

[6] Serial No. 74/337,255 filed on December 7, 1992, claiming dates of first use of April 1980. The term "La cerveza mas fina" translates into English as "The finest beer."

standing. *See* *Jewelers Vigilance Committee, Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493, 2 USPQ2d 2021, 2023 (Fed. Cir. 1987). In fact, the entire record herein supports the proposition that Modelo has pleaded and demonstrated facts sufficient to show a personal interest in the outcome of the case, and hence its standing.

### *Lanham Act period for presumption of abandonment*

Under the law in effect in 1993, when Modelo commenced this cancellation proceeding, a petitioner established a *prima facie* case of abandonment with proof of nonuse in the United States for two consecutive years. See 15 U.S.C. Section 1127.[7] The *prima facie* case "eliminates the challenger's burden to establish the intent element of abandonment as an initial part of [its] case," and creates a rebuttable presumption that the registrant abandoned the mark without intent to resume or commence use under the statute. *See* *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1582, 14 USPQ2d 1390, 1395 (Fed. Cir. 1990).

### *Petitioner's burden of proof*

Because Marco & Sons' certificate of registration is "*prima facie* evidence of the validity of the registration" and

---

[7]   Section 45 of the Trademark Act was amended, effective January 1, 1996, to extend the minimum period of nonuse to three consecutive years to establish a *prima facie* case. *See* Uruguay

4

continued use of the registered mark, the burden of proof is placed upon Modelo, the petitioner who seeks cancellation herein.  15 U.S.C. §1057(b) (1988);  *J.C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 962-63, 144 USPQ 435, 437 (CCPA 1965).  In any cancellation proceeding, the petitioner bears the burden of proof by a preponderance of the evidence, whatever the alleged grounds for cancellation.  Our principal reviewing Court has held that when the party claiming abandonment is one seeking cancellation of the registration of another's mark, the petitioner seeking cancellation bears the burden of proving abandonment by the same preponderance of the evidence standard.  *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989); 15 U.S.C. Section 1057(b).

### The evidence of record

Respondent, Marco & Sons, has submitted testimony and evidence purporting to show that it has used this mark on socks continuously for almost twenty years.[8]  Respondent claims it never had any intention of abandoning this mark, and that during the period focused on by petitioner (late-1991 to late-

---

Round Agreements Act, Pub.L.No. 103-465, Section 521, 108 Stat. 4809, 4981-82 (1994).

[8]    Rafael Bermudo, III., May 16, 1996, including exhibits of 125 invoices; Rafael Bermudo, Jr., May 16, 1996; Rafael Bermudo, Jr., October 30, 1997, Alfredo Perdomo, October 24, 1997; Andres Palancar, October 24, 1997; and Jose Baracaldo Zallas, October 24, 1997.

1993), Marco & Sons had on-going sales of its CORONA socks. Accordingly, we turn to the evidence made a part of the record during the course of this proceeding.

### Invoices

Marco & Sons submitted 125 invoices that purport to be representative of its sales from 1980 until the mid-1990's (when the testimony in this case closed). The first (Invoice #9881) is dated November 1980. For each month through March 1988 (Invoice #25840), there is a single invoice. Then during a two-year period from May 1988 through April 1990, invoices are missing from three different months. However, for the 37-month period from May 1990 to May 1993, Marco & Sons submitted invoices for only eight different months. There are no invoices between July 1992 and June 1993.

It should be noted that all the invoices from November 1980 through July 1992 are written by hand. The predominant language on these invoices (e.g., indicia such as the color of the socks, special delivery instructions, etc.) is Spanish – the native tongue for Rafael Bermudo, Jr., President of Marco & Sons, and many of his employees. In the header box on each invoice entitled "Via," half of the invoices have the notation "N/C" and most of the rest say "U.P.S." Some of the invoices having U.P.S. also show a separate listing for the dollar cost of "Flete [freight] UPS." We presume the "N/C" notation to be

something like "no charge" inasmuch as they represent customers having addresses in Miami, FL, the city of Marco & Sons' business.

However, the overall appearance and format of the invoices change significantly commencing with those of June and July 1993. Four consecutively numbered invoices are dated June 16 (#31567), June 30 (#31568), July 10 (#31569), and July 30 (#31570) - two invoices for each of these critical months. They are entirely typewritten and are done totally in the English language. In the "Via" box, are typed the letters "RBM," presumably for R.B. Marco. This is a notation found on none of the earlier invoices. While many of the earlier invoices (from November 1980 through July 1992) have a variety of signatures, initials and other notations thereon - lending credence to the suggestion that they may indeed have been produced in the ordinary course of business - these four invoices have not a single jot or tittle of handwriting. The June 1993 typed invoices are issued to Minuet Shoes, although the previous time the representative invoices listed Minuet Shoes was in 1982. The July 1993 typed invoices are both issued to Marrero Shoes. Unlike all the previous invoices issued to Marrero Shoes, these two do not carry the distinctive signature of that company's representative attesting to receipt of the goods. In spite of repeated attacks on their authenticity by petitioner, respondent did not attempt to have

7

representatives of Minuet Shoes or Marrero Shoes corroborate the authenticity of these documents.

Marco & Sons also submitted five more consecutively numbered invoices, four of which are dated November 30, 1993, and a fifth dated December 6, 1993. Like the previous invoices from June and July 1993, these consecutively numbered invoices are also typewritten and in the English language.

Because respondent has based so much of its case of continuous use on the CORONA mark as reflected on these representative invoices as submitted, in addition to the irregularities noted above, we should point out the following:

- During the period of 1980 to 1990, Marco & Sons issued an average of one hundred to two hundred invoices per month. Then during the six-weeks from June 16 to July 30, 1993, the same corporation issued only four consecutively numbered invoices (already suspect because of their radically different format and appearance).

- Furthermore, in the absence of any solid documentation, respondent would have us assume that between 1991 and 1993, all the intervening invoice numbers were actually used. Even if this were true, Marco & Sons experienced a precipitous decline in the average number of monthly invoices from the late 1980's, for all of its footwear products.

8

- A review of the representative invoices shows that Marco & Sons had several large customers through early-1988. In fact, two-thirds of all the **CORONA** brand socks alleged sold by respondent as reflected on these 125 invoices are contained in just twenty invoices representing large sales to four customers – Sedanos Pharmacy, O&P Distributors, Holiday Shoes and Guillermo Guillerriez. Yet there are no invoices from these large customers after 1988.

- From 1980 until July 1991, the initials "RB" do not appear on any invoices listing the initials of the salesperson. Yet, of the dozen invoices between August 1991 and December 1993, the initials "RB" appear on eight of them. Of these eight invoices, half were to Marrero Shoes. Another was for Calados Pimpolin in Puerto Rico, owned by an uncle of Rafael Bermudo, III.[9] Yet, it is an affidavit of Rafael Bermudo, III, dated February 26, 1994, that is used to authenticate these records.

- All the socks listed on the questionable invoices between August 1991 and December 1993 still only represent several hundred dollars of socks at retail.

Respondent repeatedly says that these invoices are merely a small representation of many more sales. However, we agree

9

with petitioner that in the context of the total record herein, the evidence of any sales of CORONA socks by Marco & Sons' from late-1991 to late-1993 is suspicious at best. Yet in spite of the voluminous record created during the instant proceeding, there is nothing else in the way of business records to convince us that respondent actually had any *bona fide* sales of CORONA socks during this critical period.[10]

## *Manufacturing Activity*

There are no indications of socks being manufactured for respondent after February 1989, or of labels being manufactured after December 1984.[11] Again, petitioner clearly attacked respondent on this issue, and yet at no point in this protracted proceeding has respondent come forward with evidence showing manufacturing activity of socks or labels since these dates.

## *No evidence of marketing or advertising*

There is no evidence in the record of any attempts to market or advertise CORONA socks. Although the testimony of

---

[9]    Rafael Bermudo, III., May 16, 1996, p. 44.
[10]    We also agree with Modelo that any attempts to ramp up the volume of usage of the CORONA mark on socks after receiving the petition for cancellation is not relevant to respondent's intentions or actual activities during the period of late-1991 to late-1993.
[11]    Jill Johnson Patton, February 17, 1995, pp. 13-24, Exhibits 1 - 7. The transcript of the deposition of Jill J. Patton, a nonparty witness, is properly entered into evidence given the May

the principals had vague references to telephone calls placed to potential customers by its salespersons, the record does not reflect the expenditure of a single dollar in advertising expenditures, and there are no documents revealing any plans to do so.

### Investigations by Modelo

The record shows that petitioner has been most active in policing its mark throughout the United States whenever its agents and investigators find uses of the mark "CORONA" on items of clothing.[12] Yet none of those who testified on behalf of Modelo, including persons knowledgeable about clothing in the south Florida market, had ever encountered respondent's goods. Modelo's own investigator called Marco & Sons several times in 1993 and was told that Marco & Sons had not sold any socks bearing the CORONA mark "for some time."[13] Finally, although several businessmen testified to continuous purchases of CORONA socks from Marco & Sons for twenty years, there were no invoices for Aleida Shoe Store or the Little Havana Drug Store. At least as of the time testimony was taken in this case, it appears as if Little Havana Drug Store and Marrero Shoes were no longer in business.

---

1996 stipulation of the parties, hereby approved by the Board. See 37 CFR §2.120(j)(2).
[12]    Roberto Viejo, September 11, 1997, pp. 19-21.

11

*Compensation for the principals of the business?*

In May 1996, Rafael Bermudo, III, testified as follows:

Q: Does R.B. Marco & Sons have any employees?

A: R.B. Marco has employees.

Q: How many employees at the present time, sir?

A: At the present time, there are two employees.

Q: And who are they?

A: My father and I.

Q: Are you salaried employees?

A: Yes, we are.

Q: You get a paycheck?

A: Yes.

...

Q: Mr. Bermudo, is it true that the only compensation you receive from the corporation is a payment of your health insurance?

A: Yes. Health insurance and maybe some minor incidental expenses related to my automobile...

...

Q: ...[I]s this your full-time occupation or do you have other occupations?

A: No, this is my full-time occupation.[14]

On the same date, his father, Rafael Bermudo, Jr., testified as follows:

Q: At this point, sir, the corporation has two, you as an employee and your son as an employee?

A: Yes.

Q: And those are the only employees, is that correct?

A: Yes.

---

[13] Richard Aznaran, August 13, 1997, pp. 12-15.
[14] Rafael Bermudo, III., May 16, 1996, pp. 29-33, 46.

12

> Q:   And … is it fair to say, sir, that the only compensation you draw is payment by the corporation of your health insurance?
>
> A:   No, I do not receive any help from R.B. Marco.
>
> Q:   Without asking the amount, do you receive any salary or any money from R.B. Marco?
>
> A:   I don't.  I personally don't.  It's my son who gets it."[15]

Then in October 1997, the same Rafael Bermudo, Jr., testified as follows:

> Q:   Who are the employees of R.B. Marco and Sons?
>
> A:   At the moment, my sister, Martha, and myself.
> …
> Q:   Only you and your sister work at this place?
>
> A:   Yes.
>
> Q:   Rafael the third is where?  He is no longer employed by you?
>
> A:   He's employed, but he is not - how should we say it?  He helps around.  He also helps, but not all of the time.
> …
> Q:   You and your sister are the only full-time employees at R.B. Marco?
> …
> A:   Yes.
>
> Q:   How long has that been true?
>
> A:   Since two years, a year and a half.
> …
> Q:   Your son is not employed any longer?
>
> A:   No.
>
> Q:   Where does Rafael … [the third] work?
>
> A:   He is looking for work right now.

---

[15]   Rafael Bermudo, Jr., May 16, 1996, p. 11.

13

Q: He is unemployed?

A: Yes.[16]

Although Modelo repeatedly asked for financial records as part of document requests, interrogatories, notices of depositions, etc., and in spite of all the discovery disputes, motions ~~practice~~, and intense litigation in this case over the past seven years, the boxes of papers generated during this proceeding contain no financial records for the Marco & Sons enterprise as a whole, much less any overall accounting of the volume of sales of CORONA socks, or the profitability of this particular line. In spite of promises by respondent's counsel that such records would be produced during Marco & Sons' testimony period for all relevant time periods, they do not appear to be part of the instant record.

## Conclusions

Abandonment is a question of fact. Based on the review of this entire record, we find, as a matter of fact, that Marco & Sons experienced a period of non-use of the CORONA mark, at least from the summer of 1991 through the fall of 1993. Marco & Sons' self-serving testimony that it never intended to abandon the mark is unsupported by the evidentiary record, and is clearly insufficient to rebut the presumption of abandonment. Even if one gives some credence to these self-serving statements and suspicious invoices, Marco & Sons' sales

14

of CORONA socks, during the period 1991 - 1993, had dwindled to a mere trickle. The most generous rendering of possible sales volume of CORONA socks by Marco & Sons during this period is consistent with a maintenance program, not the *bona fide* use of the mark in the ordinary course of trade. Throughout this proceeding, from discovery through the entire trial of this matter, Marco & Sons was not forthcoming with business records, and its principals were most evasive in answering specific questions. The principals would not even estimate an order of magnitude or a broad range for the total dollar sales of CORONA socks during a given period.[17] As seen above, the invoices submitted for this critical period raise many more questions than they answer. Because of the uncooperative and acrimonious way in which Marco & Sons' resisted discovery and thwarted petitioner's attempts at complete testimony, we cannot be sure just how miniscule were the sales during the relevant period, or indeed, if there were even any sales of CORONA socks at all.

Modelo has produced sufficient evidence to make a *prima facie* case of abandonment. Throughout the seven years of this cancellation proceeding, Marco & Sons was put on notice that it was faced with a serious allegation of abandonment, and was provided an adequate opportunity to address this issue. Accordingly, where the record contains suspicious documents,

---

[16]  Rafael Bermudo, Jr., October 30, 1997, pp. 97-99.
[17]  Rafael Bermudo, III., May 16, 1996, pp. 27-28, 37-38.

15

and where answers given under oath seem disingenuous and are intentionally vague or unclear, we must necessarily draw inferences adverse to respondent. *See Sensonics Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 38 USPQ2d 1551, 1556 (Fed. Cir. 1996). Accordingly, we conclude that respondent has not rebutted the *prima facie* case put forward by Modelo, and that as a consequence, Marco & Sons' registered mark was abandoned.

DECISION: Under the facts of this case as presented to this Board, we find that Marco & Sons has abandoned its use of the CORONA mark, and hence grant Modelo's petition to cancel. Respondent's registration will be cancelled in due course.

R. L. Simms

D. E. Bucher

C. M. Bottorff
Administrative Trademark
Judges, Trademark Trial and
Appeal Board

1 2 JUN 2000