THIS OPINION
IS A PRECEDENT OF THE
T.T.A.B.

Mailed:
March 8, 2007
jtw

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

ASSOCIATION POUR LA DEFENSE ET LA PROMOTION DE L'OEUVRE DE
MARC CHAGALL dite COMITE MARC CHAGALL
v.
Bondarchuk

_____

Cancellation No. 92042323

_____

Joseph T. Murray and Charles E. Baxley of Hart, Baxley,
Daniels & Holton for ASSOCIATION POUR LA DEFENSE ET LA
PROMOTION DE L'OEUVRE DE MARC CHAGALL dite COMITE MARC
CHAGALL.

Anatoliy Bondarchuk pro se.[1]

_____

Before Quinn, Walsh and Taylor, Administrative Trademark
Judges.

Opinion by Walsh, Administrative Trademark Judge:

ASSOCIATION POUR LA DEFENSE ET LA PROMOTION DE L'OEUVRE

DE MARC CHAGALL dite COMITE MARC CHAGALL (petitioner) has

petitioned to cancel Reg. No. 2642974 owned by Anatoliy

Bondarchuk (respondent).  The registration is for the mark

MARC CHAGALL on the Principal Register for "alcoholic

---

[1] Counsel for Anatoliy Bondarchuk requested withdrawal from the
case after the case became ready for final decision.  We hereby
approve that request and will mail this opinion both to
respondent and his former counsel.

beverages, namely, vodka."  The registration issued on October 29, 2002; the registration specifies a date of first use anywhere on June 3, 2001, and a date of first use in commerce on June 6, 2001.  The registration also includes the following statement:  "The name 'MARC CHAGALL' does not identify a living individual."

In its petition, petitioner refers to Trademark Act Section 2(a), 15 U.S.C. § 1052(a), and states the following as its grounds for cancellation:  "Respondent's alleged mark MARC CHAGALL falsely suggests a connection with the late artist Marc CHAGALL and has a potential to disparage, bring into contempt or disrepute the name CHAGALL or otherwise invade upon the rights of privacy and publicity which Petitioner seeks to defend."[2]  Petition to Cancel at ¶ 6. In his answer respondent denies the essential allegations in the petition, with one exception.  Respondent admits to ¶ 7 in the petition to cancel which states, "Respondent's mark MARC CHAGALL is the same as, or a close approximation of, the name or identity of Marc CHAGALL."  Respondent asserts a number of affirmative defenses, including "waiver and/or estoppel."  Respondent has not raised the waiver and/or estoppel defenses in his brief.  Accordingly, we consider them abandoned.  The other affirmative defenses respondent

---

[2] In its briefs, petitioner has not treated "disparagement" as a separate ground for cancellation.  Accordingly, we have not treated it as such in our decision.

2

asserts are not properly characterized as affirmative defenses, but we will address all such defenses to the extent respondent has maintained arguments related to them in his brief.

## The Record

The procedural history of this case is complex. Through the testimony periods an attorney from Belarus, not authorized to practice before the USPTO, represented respondent. Respondent subsequently retained two different attorneys in the United States who represented him at various points. Both ultimately withdrew from the representation. As we stated above, the second attorney withdrew after the filing of all briefs and after the case became ready for our final decision. As a result of this history, there remain some disputes regarding the record which we will address before proceeding further.

As a result of his own actions or failures to act respondent has failed to submit any evidence in the case. Specifically, in an interlocutory decision, dated December 13, 2004, the Interlocutory Attorney struck both Respondent's Notice of Reliance, filed June 24, 2004, and Respondent's Notice of Taking Testimonial Deposition upon Written Questions of Anatoliy Bondarchuk, filed July 22, 2004. The Interlocutory Attorney did so because respondent failed to comply with the Board's rules in connection with

these papers, and because the papers were filed by a representative not qualified to practice before the Office in violation of USPTO rules.  In another interlocutory decision, dated June 28, 2005, another Interlocutory Attorney denied respondent's request to reopen discovery. As a result of these actions all evidence which respondent attempted to submit in this case has been excluded.

Respondent first argues that the Interlocutory Attorney improperly denied his request to reopen discovery and asks us to reconsider that request now.  Respondent argues further that we should consider copies of Reg. No. 1360664 and "other third-party marks" part of the record because respondent submitted them to the USPTO during the discovery period with what respondent apparently intended to be his answer.  Respondent also asks us to accept into the record materials respondent filed with his brief, specifically, Exhibits A through D, consisting of an article from an online publication at beveragebusiness.com concerning vodka, copies of several third-party registrations from USPTO automated records and a sketch allegedly drawn by Marc Chagall.  Petitioner objects to these requests.

We deny respondent's requests.  As petitioner notes, respondent failed to request reconsideration of any interlocutory decisions at the time they were rendered. Nevertheless, we have reconsidered the decisions of the

4

interlocutory attorneys and find no error in those decisions. Accordingly, we decline to overturn the decisions of the interlocutory attorneys.

Secondly, with regard to the alleged third-party registrations respondent filed with the Office during discovery, apart from problems with the time and manner of the filing, the Interlocutory Attorney advised respondent that the USPTO would not consider those or any other papers which had been filed by an individual not authorized to represent parties before the Office. Respondent's suggestion that we should consider them of record now because petitioner has failed to object is, to say the least, without merit. The Office advised respondent they would not be considered, as filed; respondent also failed to submit the records during his testimony period under a notice of reliance. Petitioner had no reason to object to consideration of these documents under the circumstances. We deny respondent's request that we consider them of record now.

Lastly, with regard to the evidence respondent includes with his brief, it is manifestly untimely, and we will not consider it. Petitioner has not had the opportunity to rebut or otherwise respond to this evidence.

5

Furthermore, we note that we would not decide this case differently if we had considered respondent's evidence which has been stricken or otherwise excluded.

Petitioner also asks that we consider certain evidence which was not submitted in accordance with Board rules. Specifically, petitioner asks that we consider certain responses to its interrogatories and labels which respondent provided under the notice of reliance which was stricken as a result of the Interlocutory Attorney's decision discussed above. We decline to do so. Although petitioner argues that it did not specifically request that this evidence be stricken, we note that the Interlocutory Attorney struck the notice of reliance in its entirety for a number of reasons, and petitioner did not object to the action at the time. If petitioner wished to submit the responses or labels as evidence produced in response to its discovery requests it had the opportunity to do so under a notice of reliance either during its own testimony period or upon a proper motion at the time petitioner ultimately received the responses and labels. Petitioner did not do so.[3]

---

[3] To be clear, interrogatory responses provided by respondent could have been submitted by petitioner under a notice of reliance. The labels would have had to be independently eligible for submission under a notice of reliance, unless produced as documents in lieu of responses to interrogatories, because documents produced only in response to document requests cannot be submitted by notice of reliance, subject to certain limited exceptions. Trademark Trial and Apeal Board Manual of Procedure § 704.11 (2d ed. rev. 2004).

Accordingly, the record in this case consists of the pleadings, the registration file, petitioner's first notice of reliance on Petitioner's First Request for Admissions,[4] petitioner's second notice of reliance on a status and title copy of Reg. No. 2,972,208 owned by petitioner, and the testimonial deposition of Bella Meyer, including exhibits.

Petitioner has standing to bring this proceeding. Ms. Meyer testifies that Marc Chagall died in 1985, that she is the granddaughter of and one of the heirs of Marc Chagall, that she is a member of the petitioner committee and that the purpose of the petitioner committee is to defend the rights and the work of the painter Marc Chagall. Ms. Meyer confirms that, "…the committee's rights derived through inheritance through the artist Marc Chagall." Meyer testimony at 5. This testimony, together with petitioner's claim that the mark in the registration petitioner seeks to cancel falsely suggests a connection with Marc Chagall, establishes petitioner's standing. See generally Jewelers Vigilance Committee Inc. v. Ullenberg Corp., 823 F.2d 490, 2 USPQ2d 2021, 2023 (Fed. Cir. 1987).

---

[4] Petitioner first submitted the requests for admissions on the basis that respondent had not responded to the requests. Petitioner later received the responses which respondent had filed with the USPTO. We will treat respondent's actual responses to the requests for admissions as operative for purposes of our decision.

### False Suggestion of Connection

Trademark Act Section 2(a) states, in relevant part, "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—(a) consists of or comprises… matter which may disparage or falsely suggest a connection with persons living or dead, institutions, beliefs, or national symbols, or bring them into contempt or disrepute."

In <u>Buffett v. Chi-Chi's, Inc.</u>, 226 USPQ 428 (TTAB 1985), the Board set forth the requirements for maintaining a claim of a false suggestion of a connection under Trademark Act Section 2(a), citing <u>University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.</u>, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), <u>aff'g</u> 213 USPQ 594 (TTAB 1982). The Board stated:

> The Board now requires that a plaintiff asserting a claim that a mark falsely suggests a connection with persons living or dead, or institutions, demonstrate (i) that the defendant's mark is the same or a close approximation of plaintiff's previously used name or identity; (ii) that the mark would be recognized as such; (iii) that the plaintiff is not connected with the activities performed by the defendant under the mark; and (iv) that the plaintiff's name or identity is of sufficient fame or reputation that when the defendant's mark is used on the goods or services, a connection with the plaintiff would be presumed.

<u>Id.</u> at 429.

At the outset we note that respondent concedes in his brief, and elsewhere, that petitioner has satisfied

8

requirements (i) and (iii).  Respondent's brief at 2.

Therefore, we begin our analysis with the assumption that

the mark MARC CHAGALL is the same or a close approximation

of the name of the painter Marc Chagall which petitioner

seeks to protect and that respondent is not connected with

the painter Marc Chagall or his heirs.

Accordingly, we turn our attention to the two remaining

closely related requirements, that is, whether the mark

would be recognized as the name of the painter Marc Chagall

and whether the name is of sufficient fame or reputation

that when the respondent's mark is used on the goods a

connection with the painter Marc Chagall would be presumed.

Respondent argues that, "…an average consumer in the

United States may not know exactly who Marc Chagall was and

in any event would not presume a connection between

respondent's mark used on vodka and the artist Marc

Chagall."  Respondent's brief at 1.  Respondent adds,

"Petitioner has not established the fame of Marc Chagall

across the entire United States and, most importantly, among

consumers of vodka."  Id. at 2 (emphasis in original).

Respondent discounts the importance of his intentions,

stating, "Although the Notre Dame Court mentioned in dicta

that intent could be persuasive in determining that the

public may make the intended false connection, the Court, in

fact, did not give much consideration to the defendant's

mental state per se.  Rather the Court focused on the defendant's intent to trade on a good will of the famous person in connection with the defendant's goods."  Id. at 4.

Respondent also emphasizes the fact that petitioner has registered the CHAGALL mark in connection with certain goods, but not food and beverages, "let alone alcoholic beverages."  Respondent asks us to exclude from consideration the labels he provided during this proceeding, and we have.  Respondent also argues that, "The record contains no evidence whatsoever that respondent selected MARC CHAGALL to trade on the good will associated with the artist Marc Chagall."  Respondent's brief at 7 (emphasis in the original).  Respondent also argues that petitioner failed to present proper evidence, such as, "consumer surveys, customers' testimony or experts' opinion" to establish the fame of the Marc Chagall name and the relationship between Marc Chagall and vodka.  Id. at 9.  In challenging petitioner's evidence respondent argues that, "What matters is what the purchasing public and an average consumer thinks."  Id. at 8.

On the other hand, petitioner argues that, by insisting on a showing of "consumer confusion" respondent "…turns a Section 2(a) false association claim into a likelihood of confusion claim under Section 2(d)."  Petitioner's Reply brief at 1.  Petitioner also argues that respondent errs by

reading an onerous fame requirement into Section 2(a), by disregarding the fundamental principles set forth in the Notre Dame case and by misconstruing the requirements set forth in the Buffet case.  Petitioner argues further that, even under the standard respondent advances, it has satisfied all of the requirements for a claim of a false suggestion of a connection.

We agree with petitioner on all points.  First, we cannot discount the importance of respondent's intent.  In the Notre Dame case, one of the principal reasons the University's claim failed was because NOTRE DAME "is not a name solely associated with the University."  Notre Dame, 217 USPQ at 509.  Gourmet, the applicant, had explained that it had Notre Dame Cathedral in Paris, not the University, in mind when it selected the mark.  Furthermore, although the Court found no false suggestion of a connection with the University, the Court stated, "This conclusion could be changed if the evidence showed that Gourmet intended to identify the University, as the University argues.  Evidence of such intent would be highly persuasive that the public will make the intended false suggestion of a connection. The defense that the result intended was not achieved would be hollow indeed."  Id.

In this case we begin with the proposition that the MARC CHAGALL mark has no significance other than as the name

11

of the painter Marc Chagall.  Respondent has neither claimed

otherwise nor offered any evidence to the contrary.  The

evidence on this point in the record is substantial and

unambiguous.

Furthermore, the evidence as to the fame or reputation

of the painter Marc Chagall in the United States is likewise

substantial and unambiguous.  Petitioner summarizes that

evidence as follows:

> The NEW COLUMBIA ENCYCLOPEDIA (4th ed. 1975) at 498,
> Meyer Tr. Ex. 2, identifies Marc Chagall as a Russian
> painter of expressionistic style who was born in the
> City of Vitebsk in 1889.  Meyer Tr. Ex. 1.  Marc
> Chagall was from a very early age an artist who became
> world-famous.  Meyer Tr. at 5.  Recent exhibitions of
> his work include a major retrospective at the San
> Francisco Museum of Modern Art (footnote omitted), an
> exhibition at the Jewish Museum, and an exhibition in
> the City of Philadelphia.  Meyer Tr. at 6.  Permanent
> public displays of Chagall's works in New York City
> include large stained glass windows installed at the
> United Nations, two big painted panels flanking both
> sides of the exterior of the Metropolitan Opera, as
> well as public collections at the city's Museum of
> Modern Art, the Guggenheim Museum, and the Metropolitan
> Museum.  Meyer Tr. at 9.  Marc Chagall's most important
> concentration of works in the United States is in
> Chicago, including a very big mosaic of his that is
> installed at Bank One Plaza.  Meyer Tr. at 9.
> Consequently, M. Chagall's fame extends to the United
> States…"

All of the evidence petitioner cites here is supported

by the record.  We note, in addition, a letter from

respondent to petitioner, which Ms. Meyer placed in the

record.  The letter proposes a cooperative arrangement

between respondent and petitioner in marketing respondent's

vodka product under the MARC CHAGALL mark.  In the letter

respondent states, "As you know we have started the production of Chagall vodka in Belarus in order to commemorate the name of a great artist, whose love for his hometown Vitebsk was so profound that he portrayed it in almost every painting that came off his brush." Later in the letter respondent even suggests the possibility of a licensing arrangement without specifying which of the parties would be the licensor.

Also, the label which respondent provided as part of his application includes not only the MARC CHAGALL mark but also what appears to be a portrait of the painter Marc Chagall and an artist's palette.[5]

Accordingly, we conclude that the evidence in this record is more than adequate to establish that the mark would be recognized as the name of the painter Marc Chagall and that the name is of sufficient fame or reputation that when the respondent's mark is used on the goods a connection with the painter Marc Chagall would be presumed.

Indeed, this is just the type of case where the respondent's intent is clear and, as the Court observed in

---

[5] As we stated above, we have not considered the labels which respondent submitted during this proceeding, but only the labels which are part of the application/registration record. We find respondent's assertion that he has not sold his product in the United States and that he would use a different label in the United States unpersuasive. Respondent submitted the label in conjunction with his claim that he had used the mark in commerce (in the United States) and the registration was issued based on that use.

13

the Notre Dame case, "the defense that the result intended was not achieved would be hollow indeed." Notre Dame, 217 USPQ at 509. We infer from the evidence, and in particular respondent's letter and label, that respondent regarded the name of Marc Chagall as one of significant reputation which would generate good will in the sale of respondent's vodka. We find this evidence highly persuasive. Respondent's denial that this is the case in this proceeding rings hollow.

Furthermore, we reject respondent's construction of the showing of "fame" required to support a claim of a false suggestion of a connection. Respondent suggests an extremely rigorous requirement which is inappropriate under the circumstances of this case. In fact, the requirement which applies here is one of "…fame or reputation" (emphasis provided) rather than a strict fame requirement which may apply with respect to other grounds for opposition or cancellation. Buffett, 226 USPQ at 429. Cf. NASDAQ Stock Market Inc. v. Antarctica S.r.l., 69 USPQ2d 1718 (TTAB 2003); Toro Co. v. ToroHead Inc., 61 USPQ 1164, 1173 (TTAB 2001). More generally, as petitioner argues, the requirements to establish a claim of falsely suggesting a connection under Trademark Act Section 2(a) differ markedly from the requirements for establishing either likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C.

14

§ 1052(d) or dilution under Trademark Act Section 43(c), 15 U.S.C. § 1125(c).

We also reject respondent's suggestion that petitioner's showing of fame or reputation is inadequate because it does not show fame in the entire United States. The evidence, in fact, shows that the works of Marc Chagall have been featured in exhibits in several major U.S. cities in several regions, and that his works are also displayed beyond museums and galleries in public places. To the extent petitioner may be required to show fame or reputation, the geographic scope of this evidence is sufficiently broad.

We also reject respondent's suggestion that a survey, consumer testimony or expert opinions are required in this case to show the necessary "fame or reputation" for purposes of the claim of false suggestion of a connection. We find no support for imposing such a requirement in conjunction with the claim at issue here.

In his brief, respondent has cited a number of cases and discussed them at some length. We have considered these arguments carefully and find them unpersuasive. There are significant factual differences between the case before us and each of those cases. We have already noted the important differences between this case and the Notre Dame case with regard to intent and other key facts.

15

As a further example, respondent relies on U.S. Navy v. United States Manufacturing Co., 2 USPQ2d 1254 (TTAB 1987). In that case, the mark at issue was USMC, a letter mark which had been in use for a substantial period. Here also, the most significant factual difference is with respect to intent. In the U.S. Navy case, there is no evidence of an intent to falsely suggest a connection. In this case, there is clear evidence of such intent.

Though neither party mentions the case, we note some significant similarities between this case and In re Sloppy Joe's Int'l, 43 USPQ2d 1350 (TTAB 1997). In that case, the applicant was attempting to register a mark consisting, in part, of a portrait of Ernest Hemingway for "restaurant and bar services," and the Board affirmed the refusal of registration on the ground of a false suggestion of a connection. Id. at 1252. We find the marks, and the goods and services in the Hemingway case, analogous to the case before us.

Both cases involve individuals noted for their literary or artistic achievements who died relatively recently. In the Hemingway case, the Board rejected the applicant's argument, "…that Hemingway is an historical figure, known for his writing, an activity unrelated to bar and restaurant services, and [that] prospective purchasers of the applicant's services would not presume a connection between

16

such services and Hemingway." Id. at 1353. Cf. In Re

Lucien Picard Watch Corp. v. Crescent Corp., 314 F.Supp.

329, 165 USPQ 459 (S.D.N.Y. 1970) (Use of DA VINCI mark on

jewelry does not create a false connection with Leonardo Da

Vinci). Rather, The Board concluded that, "the names and

likenesses of well known persons frequently are licensed for

use on various goods and services. (Citations omitted.)

Thus, the name and/or likeness of a well known writer may

well be 'extended' for use on goods or services unrelated to

writing." In re Sloppy Joe's Int'l, 43 USPQ2d at 1354. See

also In re Sauer, 27 USPQ2d 1973 (TTAB 1993).

In this case, we have testimony from Ms. Meyer that

Petitioner is, in fact, licensing the CHAGALL mark for use

on goods, including dinnerware. Meyer testimony at 15.

Petitioner has also made of record its registration on the

Principal Register, based on use in commerce, for the

CHAGALL mark for a wide range of goods in International

Classes 16 and 28.[6] We are not suggesting, as respondent

---

[6] The goods identified in Reg. No. 2872208 are: "Works of art, namely, paintings, etchings, engravings, pictures, photographs and reproductions, photo-engravings, postcards; posters; lithographs, lithographic prints; art prints; paper, namely art papers, typing paper, carbon paper and bond papers, art reproductions on paper or canvas or cardboard, graphic art representations and reproductions, cardboard, namely boxes of cardboard, cardboard backing for binding books, cardboard mailing tubes, printed matter, namely books, magazines, booklets featuring fine art, history of art and architecture, biographies, bookbinding material, namely bookbinding tape and wire and cloth for binding books; adhesives for stationery or household purposes; artists' materials, namely, artist's brushes, pastels, pens, pencils; paint brushes; electric and non-electric

17

argues, that petitioner must show use of the name MARC CHAGALL on vodka or any other goods. This evidence merely lends further support to our conclusion that the MARC CHAGALL mark would be recognized as the name of the painter Marc Chagall and that the name is of sufficient fame or reputation that when the mark is used on the goods a connection with the painter Marc Chagall would be presumed. Here also we reject the suggestion that we apply a likelihood-of-confusion standard. In the Notre Dame case, the Court clearly distinguished the analysis required with respect to a claim of falsely suggesting a connection as opposed to a claim of likelihood of confusion due to the different origins and purposes of the claims. Notre Dame, 217 USPQ at 509.

In the Hemingway case, the Board also refers to the fact that the mark unmistakably identified Hemingway and that the applicant, in its activities and use of the mark, intended to honor Hemingway. Finally, the Board found this

---

typewriters; office supplies, namely, pens, stationery, file folders and index cards; printed instructional and teaching material for use in the field of art history and for use in teaching art at the primary and secondary school levels; printer's type, printing blocks, newspapers in the field of fine art, comic books, writing and drawing books, calendars, catalogs in the field of art, flags of paper; books, namely, biographical books, fiction books, children's books and non-fiction books in the field of fine art and architecture, and magazines in the field of fine art" in Class 16, and "Playing cards" in Class 28.

evidence of intent "highly persuasive" under the Notre Dame standard.  In re Sloppy Joe's Int'l, 43 USPQ2d 1354.

In this case, as in the Hemingway case, we have highly persuasive evidence of intent.  In the Hemingway case, the Board concluded that there would be a false suggestion of a connection without any mention of evidence of the fame or reputation of Ernest Hemingway.  Here, in addition to the highly persuasive evidence of intent, we also have substantial evidence of the fame or reputation of Marc Chagall in the United States.  Under the circumstances, we have no hesitation in concluding that petitioner has established here, under Buffett requirements (ii) and (iv), that the mark would be recognized as the name of the painter Marc Chagall and that the name is of sufficient fame or reputation that when the respondent's mark is used on the goods a connection with the painter Marc Chagall would be presumed.

### Conclusion

In conclusion, after carefully considering all evidence of record, and the requirements delineated in Buffett, we conclude that the totality of evidence establishes that respondent's MARC CHAGALL mark in Reg. No. 2642974 creates a false suggestion of a connection with the painter Marc Chagall.

19

**Decision**: The petition for cancellation is granted.

Reg. No. 2642974 will be canceled in due course.