Original Decision Mailed:
Redesignation Order Mailed:
November 9, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*D.C. One Wholesaler, Inc.*
*v.*
*Jonathan E. Chien*

_____

Opposition No. 91199035
Cancellation No. 92053919
(Consolidated Proceedings)

_____

Decision Redesignated as a Precedent of the Board

_____

Deborah M. Lodge of Squire Patton Boggs (US) LLP for D.C. One Wholesaler, Inc.

Jonathan Chien, *pro se.*

_____

Before Ritchie, Kuczma, and Masiello, Administrative Trademark Judges.

By the Board:

The Board has chosen to redesignate the decision that issued on October 4, 2016 as a precedent. A copy of the decision, bearing such designation, is attached.

Three corrections have been made to the decision as originally issued. On p. 7, a reference to "Applicant's president" has been corrected to read "Respondent's president." On p. 8, the orientation of an image that had been presented in inverted and reversed form has been corrected. In footnote 47, the word "AND" has been replaced with "and."

####

THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
October 4, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*D.C. One Wholesaler, Inc.*
*v.*
*Jonathan E. Chien*

_____

Opposition No. 91199035
Cancellation No. 92053919

_____

**CONSOLIDATED PROCEEDINGS[1]**


Deborah M. Lodge of Squire Patton Boggs (US) LLP for D.C. One Wholesaler, Inc.

Jonathan Chien, *pro se*.[2]

_____

Before Ritchie, Kuczma, and Masiello, Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

---

[1] In this decision, citations refer to the record in Opposition No. 91199035, unless otherwise noted.

[2] Respondent's counsel was allowed to withdraw by the Board's order of August 14, 2015 (53 TTABVUE).

Jonathan E. Chien ("Respondent"), dba I Love DC, LLC, has filed an application (the "Application")[3] to register on the Principal Register the mark shown below for "sweatshirts, T-shirt, Baseball caps, Skull Caps, Polo Shirts," in International Class 25:



Respondent is also the owner of U.S. Reg. No. 3759575 on the Supplemental Register (the "Registration") for the mark shown below:[4]



The mark is registered for the following goods:

> Backpacks, book bags, sports bags, bum bags, wallets and handbags; Military duffle bags, garment bags for travel, tote bags, shoulder bags and backpacks; Schoolchildren's backpacks; Small backpacks; Tote bags, in International Class 18;
>
> Baseball caps; Cap visors; Caps; Caps with visors; Golf caps; Golf shirts; Headbands against sweating; Hooded sweat shirts; Short-sleeved or long-sleeved t-shirts; Skull caps; T-shirts; Woolly hats, in International Class 25;
>
> Stuffed and plush toys, in International Class 28.

---

[3] Application Serial No. 77962853, filed on March 18, 2010 under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), stating a date of first use and first use in commerce of February 21, 2006.

[4] Issued March 9, 2010; Section 8 affidavit accepted.

With respect to each mark, the colors black and red are claimed as features of the mark; and Respondent has disclaimed the exclusive right to use DC apart from the mark as shown.[5]

D.C. One Wholesaler, Inc. ("Petitioner") has opposed the registration of the mark in the Application; and has filed a petition to cancel the Registration. The Board consolidated the opposition proceeding with the cancellation proceeding by order of April 28, 2011 (7 TTABVUE). In each case, Petitioner's grounds for opposition or cancellation are that Respondent's mark is "incapable of distinguishing Respondent's goods from the goods of others and therefore cannot function as a trademark and an indicator of source";[6] and that certain statements of Respondent made in the prosecution of the Application and in procuring the Registration were false and constituted a fraud upon the USPTO.[7]  In each case, Respondent denied the salient allegations.

Petitioner has filed testimony, evidence, and a brief on the case. Respondent has filed neither evidence nor a brief.

---

[5] In the title records of both the Application and the Registration, Respondent is identified as a limited liability company organized under the laws of the District of Columbia. This is an anomaly, because the record of this proceeding shows that Jonathan E. Chien is a natural person.

[6] Duplicate amended notice of opposition ¶¶ 9-10 (5 TTABVUE 7-8); Petition for cancellation ¶ 12 (1 TTABVUE 5 in 92053919).

[7] Duplicate amended notice of opposition ¶¶ 19-20 (5 TTABVUE 11-12); Petition for cancellation ¶¶ 19-20, 23-24 (1 TTABVUE 9-10 in 92053919).

## I.     The record.

The record includes the pleadings and, by operation of Trademark Rule 2.122, 37 C.F.R. § 2.122, the application file of the opposed mark and the registration history of the registered mark. The record also includes the following testimony and evidence submitted by Petitioner:

1.     Testimony deposition of Yu Shao, Petitioner's principal, and exhibits (58 TTABVUE).

2.     Testimony deposition of Thomas J. Maronick, professor of marketing, Towson University, and exhibits (59 TTABVUE).[8]

3.     Testimony deposition of Charles Bender, and exhibits (60 TTABVUE).

4.     Testimony deposition of Karen Agee, trademark specialist, Squire Patton Boggs (US), LLP and exhibits (61 TTABVUE).

5.     Discovery deposition of Jonathan Eric Chien, Respondent, and exhibits (50 TTABVUE 5-171).

6.     Discovery deposition of Shan Kathleen Chien, Respondent's manager, and exhibits (50 TTABVUE 172-271).

7.     Notice of reliance on internet materials. (51 TTABVUE).

## II.     Standing.

As a threshold matter, Petitioner must prove its standing in order to be heard on the claims it has brought. *See, e.g., Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 187 (CCPA 1982). To do so, Petitioner must prove that it has a "real interest" in the proceedings and a "reasonable" basis for its belief of damage.

---

[8] Petitioner submitted an expert report of Mr. Maronick under a notice of reliance, 59 TTABVUE. However, such evidence is not of a type that may properly be made of record under a notice of reliance. In any event, the same expert report was included as Exhibit 4 to the Maronick deposition.

*Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *see also Jewelers Vigilance Committee Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021 (Fed. Cir. 1987). To prove a "real interest" in this case, Petitioner must show that it has a "direct and personal stake" in the outcome and is more than a "mere intermeddler." *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *Ritchie v. Simpson*, 50 USPQ2d at 1026.

Petitioner's principal testified that Petitioner and Respondent are competitors in the business of selling "D.C. souvenirs" at wholesale to retailers of such souvenirs, such as gift shops and street vendors.[9] Petitioner sells sweatshirts, t-shirts, caps, key chains, and tote bags bearing designs that resemble the marks in the Registration and Application.[10] Petitioner's principal testified that, because of certain advertisements of Respondent regarding his registration rights, some tourists fear that Petitioner's goods are illegal and some vendors are afraid to buy from Petitioner.[11] This testimony is sufficient to demonstrate Petitioner's standing. "Once standing is established, the [plaintiff] is entitled to rely on any of the grounds set forth in … the Lanham Act which negate [defendant's] right to its subject registration." *Jewelers Vigilance Committee,* 2 USPQ2d at 2023-4.

---

[9] Yu Shao dep. 10:17-22, 11:5, 58 TTABVUE 12, 13. Mr. Yu Shao testified in Chinese with the assistance of an interpreter.

[10] *Id*. at 12:13-17, 58 TTABVUE 14.

[11] *Id*. at 20:6, 21:15-18, 58 TTABVUE 22, 23.

### III.     Failure to function as a mark.

We will first address Petitioner's claim that Respondent's marks fail to function as trademarks. Section 45 of the Trademark Act defines a "trademark" as "any word, name, symbol, or device, or any combination thereof – (1) used by a person … to identify and distinguish his or her goods … from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. It is well settled that not every designation that is placed or used on a product necessarily functions as a trademark for said product and not every designation adopted with the intention that it perform a trademark function necessarily accomplishes that purpose. *In re Eagle Crest Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010).[12] The critical inquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public. *Id*.

Petitioner argues:

> I ♥ DC is a common slogan or logo used in an informational and ornamental manner on t-shirts and various other retail items produced and/or sold by many third parties. Consumers are accustomed to seeing I ♥ DC from multiple sources. Consumers do not perceive I ♥ DC as signifying source or origin. Rather, they perceive the slogan as conveying appreciation for Washington DC or other person/place/thing that follows the heart symbol. The I ♥ DC logo – in any format – does not function as a trademark and should not be registered.[13]

---

[12] As an initial matter, we note that Respondent's registered mark is not entitled to the presumption of validity established by Trademark Act Section 7(b), 15 U.S.C. § 1057(b), because Respondent's mark is registered on the Supplemental Register. The Section 7(b) presumption is, by its terms, limited to marks registered on the Principal Register.

[13] Petitioner's brief at 13-14, 64 TTABVUE 14-15.

A.    Facts in evidence.

Petitioner has demonstrated that apparel, such as men's and women's t-shirts, sweatshirts and caps, and children's onesies, bearing a prominent display of the phrase I ♥ DC are available from a variety of sources. Other types of merchandise, such as mugs, commuter cups, carry-bags, teddy bears, aprons, and keychains are also common. *See* Agee dep. Exhibit 2, showing such goods offered on <amazon.com>, <cafepress.com>, <zazzle.com>, and <capitolshoppingmall.com>;[14] and Agee dep. Exhibits 5 and 7-11, showing additional similar goods offered on websites of American Home Gifts of DC, <citysouvenirs.com>, <spreadshirt.com>, <cafepress.com>, and <zazzle.com>.[15] Respondent's president and manager testified that they have never sold their goods to <amazon.com>, <cafepress.com> or <zazzle.com>.[16] On such goods, the phrase is typically displayed in large format, *e.g.*, covering the entire front of a t-shirt, the entire front panel of a baseball cap, all of one side of a mug, or much of the belly of a teddy bear. Most often, the phrase is displayed in a stacked format, with "I ♥" positioned directly above "DC," as shown in Respondent's registered mark. However, horizontal displays of the phrase are also common. On the great majority of such goods, the phrase is displayed in black lettering with a red heart. Goods bearing such displays are also found on Respondent's website at <ilovedcllc.com>. *See id.*, 61 TTABVUE 107 (t-shirt), 109 (carrybag), and 51 TTABVUE 49, 52 (jackets).

---

[14] 61 TTABVUE 38-103.

[15] 61 TTABVUE 126-128, 130-165, and 62 TTABVUE.

[16] J. Chien dep. 58:8-22; S.K Chien dep. 24:9-19, 50 TTABVUE 63, 196.

Respondent also submitted images of such goods as its original specimens of use in the application underlying the Registration. Images are shown below:





Petitioner's principal testified that Petitioner has offered such goods, including sweatshirts, t-shirts, caps, key chains, and tote bags, since at least 2005,[17] and made of record an invoice dated November 30, 2004 from Petitioner's importing company and an invoice of Petitioner to a customer showing items shipped on August 26, 2005.[18] The evidence includes one of Petitioner's catalogues, showing such goods.[19]

---

[17] Yu Shao dep. 12:13-17, 14:2, 58 TTABVUE 14, 16.

[18] *Id.*, Exhibit 3, 58 TTABVUE 66-68.

[19] *Id.*, Exhibit 2, 58 TTABVUE 40-65.

Witness Charles Bender, who operates an online gift and souvenir shop through three websites specializing in souvenirs of Washington, D.C., testified that he started business on January 17th, 2001, that he first saw merchandise of the type described above "back in the end of 2000, the beginning of 2001," and that this type of product "was probably one of our most popular items from the very beginning."[20] He identified two shirts bearing a stacked I ♥ DC design highly similar to Respondent's registered mark as being types of goods that he purchased in his earliest days.[21] He testified that he originally purchased such goods from three wholesalers named Capsco, Silburn, and Joe's Wholesale, and that "We have expanded and gone beyond those three, and other wholesalers then we found carried that, that same design, and on more items like sweatshirts, and again a variety of caps with that design."[22] He currently purchases such goods from Petitioner and a company called N&T.[23] He formerly obtained such goods from Triple Timber (a company associated with Respondent) and from companies called Shin Sung and Planet Cotton.[24] The record contains numerous images of Mr. Bender's merchandise,[25] including the following items:

---

[20] Bender dep. 18:4-13, 20:9-21:8, 60 TTABVUE 20-23.

[21] *Id*. 23:9-13, 23:17-19 and Bender Exhibit 2, 60 TTABVUE 25, 58-60.

[22] *Id*. 21:11-17, 60 TTABVUE 23.

[23] *Id*. 21:21-22:5, 60 TTABVUE 23-24.

[24] *Id*. 35:11-18, 36:2-3; 13:9-12, 60 TTABVUE 37, 38, 15.

[25] *Id*., Exhibit 9, 60 TTABVUE 72-81.



He stated that none of his current merchandise was purchased from Respondent or Triple Timber.[26]

Petitioner has also shown that designs consisting of "I ♥" followed by designations other than DC are common in the souvenir industry. *See* Agee dep. Exhibit 3, showing souvenir items available on <cafepress.com>, <zazzle.com>, and <customizedgirl.com> bearing designs such as the following:[27]

| | | | |
|---|---|---|---|
| I ♥ ME | I ♥ EXCEL | I ♥ NURSING | I ♥ PROBLEM SOLVING |
| I ♥ TX | I ♥ NERDS | I ♥ JESUS | I ♥ MY BIG SISTER MAGGIE |
| I ♥ NANA | I ♥ RUGBY | I ♥ KETCHUP | I ♥ MY IRISH TERRIER |
| I ♥ RAP | I ♥ SARAH | I ♥ MY BUBBLY | I ♥ DANCE MUSIC |

Petitioner submitted the testimony and written report of Thomas J. Maronick, a professor of marketing at Towson University, Maryland. He stated in his report:

> I believe that consumers who buy or wear/use [such goods] do so because they want to show affection for or affiliation with the "XXX" object … I do not believe that consumers perceive the phrase I ♥ XXX as a designation of origin or source. Instead, it is perceived as a slogan that is

---

[26] *Id*. 26:21, 60 TTABVUE 28.

[27] 61 TTABVUE 113-121. Mr. Bender confirmed that he has seen and marketed such other designs, saying, "So it can be commonly found all over the United States with different variations of the information that's underneath the I Heart part." Bender dep. 28:19-29:8, 60 TTABVUE 30-31.

> ornamental and connotes an affection for or association with the "XXX" object.[28]

In his testimony, Professor Maronick explained why he believes people buy such goods:

> I think the primary reason is to show affection or affiliation with what follows.[29]

> What follows the heart is the critical thing. That's the affection of the affiliation [a]s to what follows the heart, not the "I Heart" itself. That just is a vehicle to communicate what I really care about, which is the word or phrase that follows the heart.[30]

Mr. Bender, when asked to explain the meaning of I ♥ DC to customers, stated:

> it's sort of a personal identification that they have with an association with Washington, DC.[31]

When asked whether customers associate I ♥ DC with any particular vendor or source, he replied:

> I wouldn't think so. …our customers and tourists, when they purchase the items, they purchase it because they like the design or they like the product itself. … and I'm sure that they don't care who sold it to them or where they originated. .. They don't know and they don't care. It's not something that they're interested in. They're interested in the souvenir, the item themselves.[32]

Petitioner's principal testified that his customers (souvenir retailers) sell to tourists who buy the goods because "It's for a memorandum of their trip to D.C." He said that

---

[28] Maronick dep. Exhibit 4, ¶ 9, 59 TTABVUE 59.

[29] Maronick dep. 18:1-2, 59 TTABVUE 20.

[30] *Id*. 15:22-16:5, 59 TTABVUE 17-18.

[31] Bender dep. 27:17-19, 60 TTABVUE 29.

[32] *Id*. 28:1-16, 60 TTABVUE 30.

11

tourists like the emblem "because it represents D.C."[33] When asked whether he uses the design to tell customers that the products come from Petitioner, he replied, "No."[34]

Respondent testified that I ♥ DC means "I love D.C., the District of Columbia";[35] that he did not create the design[36] and that "[t]he actual logo has been out since the '60s."[37] When asked whether, at that time, the design was in use by anyone who wanted to use it, he replied, "Yes it was."[38] He stated that at the time he filed his application, he was aware of other vendors in the D.C. area using the logo.[39] When asked about the expression I ♥ TX on a t-shirt, he stated that it means "I love Texas," and that the design was an expression of "An appreciation for Texas."[40]

Respondent's manager, when asked about the meaning of I ♥ DC on third-party goods, stated, "Well, they love D.C., they love the District of Columbia." [41] When asked why customers buy such goods, she replied, "Just to remember that they've been there" and "Yeah, that they have been in that place, Washington, D.C., that's what it is."[42] She confirmed that she did not create the design, that the design was used by others when she assisted in filing Respondent's application, and that it is currently

---

[33] Yu Shao dep. 13:9-16, 58 TTABVUE 15.

[34] *Id.* at 19:14, 58 TTABVUE 21.

[35] J. Chien dep. 20:21-24, 50 TTABVUE 25.

[36] *Id.* 31:25-32:7, 50 TTABVUE 36-37.

[37] *Id.* 31:13-15, 50 TTABVUE 36.

[38] *Id.* 33:5-8, 50 TTABVUE 38.

[39] *Id.* 43:18-44:19, 50 TTABVUE 48.

[40] *Id.* 55:20-24, 50 TTABVUE 60.

[41] S.K. Chien dep. 26:4-5, 50 TTABVUE 198.

[42] *Id.* 26:12-19, 50 TTABVUE 198.

12

used by others.[43] She stated that her motivation in seeking registration of the design as a trademark was to prevent copying of Respondent's products by competitors:

> So whenever we do something, we create something, and if it's for selling, and the people just try to pick it up and then try to copy it and then try to kill the market, you know, with the prices and everything so we just want to protect ourselves.[44]

> In fact, those bags that I created, and the people copied it, and then they slashed my, you know, price down, so that's why – and, you know, gradually I said, in order to protect me, I have to do something, so that's why I did it.[45]

The record includes examples of Respondent's hangtags and labels bearing Respondent's asserted marks, affixed to goods that do not otherwise display the marks prominently. The following examples are representative:[46]

 

---

[43] *Id*. 29:22-23, 30:6, 9, 50 TTABVUE 201, 202.

[44] *Id*. 31:15-21, 50 TTABVUE 203.

[45] *Id*. 34:15-20. *See also id*. 45:23-46:8, 49:11-15, 50 TTABVUE 206, 217-218, 221.

[46] Specimen submitted with Section 8 affidavit for the Registration; substitute specimen submitted for the Application.

B.    Discussion.

"The Trademark Act is not an act to register mere words, but rather to register trademarks. Before there can be registration, there must be a trademark, and unless words have been so used they cannot qualify." *In re Bose Corp.*, 546 F.2d 893, 192 USPQ 213, 215 (CCPA 1976). To be a mark, the phrase must be used in a manner calculated to project to purchasers or potential purchasers a single source or origin for the goods. *In re Volvo Cars of North America Inc.*, 46 USPQ2d 1455, 1459 (TTAB 1998).

The record before us indicates that I ♥ DC has been widely used, over a long period of time and by a large number of merchandisers, as an expression of enthusiasm, affection or affiliation with respect to the city of Washington, D.C. This significance of the expression is reinforced by the fact that similar expressions in the form "I ♥ __" have also been widely used to express such enthusiasms with respect to other places and things. Respondent and his manager both admitted that I ♥ DC has this meaning, and neither of them suggested that their use of the term was exclusive or served as an effective method of indicating the source of their goods. In this regard, their testimony agreed with the testimony of the other witnesses in this case. The evidence shows that in the relevant field of goods, and especially in the field of such goods marketed as souvenirs, the marketplace is awash in products that display the term I ♥ DC as a prominent ornamental feature of such goods, in such a way that the display itself is an important component of the product and customers purchase the product precisely because it is ornamented with a display of the term in an

informational manner, not associated with a particular source. *See In re Eagle Crest Inc.*, 96 USPQ2d at 1230 ("Because consumers would be accustomed to seeing this phrase [ONCE A MARINE, ALWAYS A MARINE] displayed on clothing items from many different sources, they could not view the slogan as a trademark indicating source of the clothing only in applicant. It is clear that clothing imprinted with this slogan will be purchased by consumers for the message it conveys."). *Cf. M.B.H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50, 208 USPQ 391 (7th Cir. 1980) (where plaintiff asserted rights in the mark I LOVE ___ for radio entertainment services, Court affirmed denial of injunction against use of I LOVE YOU MILWAUKEE!, WOKY LOVES MILWAUKEE, and ROBB EDWARDS LOVES MILWAUKEE, finding that the defendant used the phrases "otherwise than as a mark," under Trademark Act Section 33(b)(4), 15 U.S.C. § 1114(b)(4).).

We find that the phrase I ♥ DC on apparel and other souvenirs, whether displayed in the stacked format shown in the Registration or in the horizontal format shown in the Application, would be perceived by purchasers and prospective purchasers as an expression of enthusiasm for the city of Washington, DC. Under such circumstances, customers would not perceive I ♥ DC as an indicator of the source of the goods on which it appears. The fact that Respondent has sometimes displayed I ♥ DC on hangtags and labels, in a non-ornamental manner that is conventional for the display of trademarks, does not require a different result. "In every case, the question is not whether the mark has been associated with the goods by a particular mode or manner, but whether the matter sought to be registered performs the function of a

trademark by signifying to purchasers the source of the goods sold or offered for sale." *In re Paramount Pictures Corporation*, 213 USPQ 1111, 1115 (TTAB 1982). The widespread ornamental use of the phrase by third parties "is part of the environment in which the [mark] is perceived by the public and … may influence how the [mark] is perceived." *In re Hulting*, 107 USPQ2d 1175, 1178 (TTAB 2013), quoting *In re Tilcon Warren Inc.*, 221 USPQ 86, 88 (TTAB 1984). Because the nature of the phrase will be perceived as informational, and also because the ubiquity of the phrase I ♥ DC on apparel and other souvenirs of many makers has given it a significance as an expression of enthusiasm, it does not create the commercial impression of a source indicator, even when displayed on a hangtag or label. *See Damn I'm Good Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357, 212 USPQ 684 (S.D.N.Y. 1981) (where plaintiff used DAMN I'M GOOD as a message engraved on a bracelet and commenced use of the term on a hangtag only after competitors began to produce similar products, court held that "plaintiff does not hold a valid trademark.").[47]

Having considered all the evidence and arguments of record, we find that I ♥ DC, in the two stylized formats set forth in the Application and Registration, fails to function as a trademark for Respondent's goods.

In view of our determination, we need not reach Petitioner's claim of fraud on the USPTO.

---

[47] Curiously, the plaintiff in *Damn I'm Good* also sold bracelets bearing a number of other messages, including I LOVE WASHINGTON, I LOVE MY DOG, I LOVE MY WIFE, I LOVE MY POODLE, I LOVE MY CHOCOLATE, I LOVE MY DIET, I LOVE TENNIS, I LOVE JUNK FOOD, I LOVE JOGGING, I LOVE MY COFFEE BREAK, I LOVE MY ICE CREAM and I LOVE MY ROLLS ROYCE. 212 USPQ 686 n.2. However, the case did not involve a claim to trademark rights in any of these phrases.

**Decision:** The opposition to Application Serial No. 77962853 is sustained and the petition to cancel Reg. No. 3759575 is granted, in each case on the ground that the proposed mark fails to function as a trademark. Registration is refused as to the Application and the Registration will be cancelled in due course.