This Opinion is a
Precedent of the TTAB

Mailed: June 6, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

―――

Trademark Trial and Appeal Board

―――

*In re Leathernecks Motorcycle Club International, Inc.*

Serial No. 90498154

―――

Joseph D. Hodler, Esq.,
    for Leathernecks Motorcycle Club International, Inc.

Kevon L. Chisolm, Trademark Examining Attorney, Law Office 103,
    Stacy Wahlberg, Managing Attorney.

―――

Before Greenbaum, Adlin and Dunn,
    Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:[1]

---

[1] As part of an internal Board pilot citation program on broadening acceptable forms of legal citation in Board cases, this decision varies from the citation form recommended in the TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 101.03 (June 2023). This opinion cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board and the Director, this opinion may cite to precedential decisions in the WESTLAW (WL) or LEXIS legal database. As of the date of this opinion, the Board has not determined what database(s) it will use for recommended case citation in the future; the pilot is ongoing, using various citation forms. Until further notice, practitioners should continue to adhere to the citation form recommended in TBMP § 101.03.

Serial No. 90498154

Leathernecks Motorcycle Club International, Inc. ("Applicant") seeks registration

on the Principal Register of as a collective membership mark

for "indicating membership … in a motorcycle club," in Class 200.[2] All present members of Applicant "are active duty or honorably discharged U.S. Marines, or U.S. Navy Corpsman who have served with the Fleet Marine Force." March 21, 2022 Response to Office Action, TSDR 7.

The Trademark Examining Attorney refused registration of the mark under Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a), because it falsely suggests a connection with the U.S. Marine Corps ("USMC"), an institution of the U.S. government.

When the refusal was made final, Applicant appealed and requested reconsideration. After the Examining Attorney denied the request for reconsideration, the appeal was resumed and is now briefed.[3] We affirm the refusal to register.

---

[2] Application Serial No. 90498154 was filed on January 29, 2021 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), and is based upon Applicant's claim of its members' first use anywhere and first use in commerce since at least as early as December 1, 1999. The application includes the following description of the mark: "The mark consists of the word 'LEATHERNECKS' in gold, written in an ascending arc on a scarlet background with a gold border." The colors scarlet and gold are claimed as a feature of the mark.

[3] Citations to the briefs on appeal refer to the Board's TTABVUE docket system; citations to the prosecution record refer to the United States Patent and Trademark Office (USPTO) Trademark Status and Document Retrieval system (TSDR) in .PDF format. *See In re Integra Biosciences Corp.*, 2022 TTAB LEXIS 17, at *6 (TTAB 2022).

## I.   Section 2(a) False Suggestion of a Connection

Section 2(a) of the Trademark Act prohibits registration on either the Principal or the Supplemental Register of "matter which may … falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols." 15 U.S.C. § 1052(a). "[T]he rights protected under the § 2(a) false suggestion provision are not designed primarily to protect the public, but to protect persons and institutions from exploitation of their persona." *Bridgestone/Firestone Rsch. Inc. v. Auto. Club de l'Ouest de la France*, 245 F.3d 1359, 1364 (Fed. Cir. 2001) (citing *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1376 (Fed. Cir. 1983)).

The U.S. government, as well as government agencies and instrumentalities, are considered juristic persons or institutions within the meaning of the statute. 15 U.S.C. § 1052(a); Section 45 of the Trademark Act, 15 U.S.C. § 1127. *See In re Peter S. Herrick P.A.*, 2009 TTAB LEXIS 428, at *3 (TTAB 2009) ("Institutions, as used in Section 2(a), include government agencies."). The USMC, a separate service within the U.S. Department of the Navy, is one such juristic person or institution.[4] *In re Cotter & Co.*, 1985 TTAB LEXIS 50, at *8 (TTAB 1985) (finding the United States Military Academy is an institution and West Point "has come to be solely associated with and points uniquely to the United States Military Academy"); *NASA v. Record*

---

[4] We take judicial notice that the U.S. Marine Corps is "a separate military service within the U.S. Dept. of the Navy." ENCYCLOPEDIA BRITANNICA (2024) (britannica.com), accessed April 26, 2024. The Board may take judicial notice of encyclopedia entries. *In re White Jasmine LLC*, 2013 TTAB LEXIS 9, at *20 n.24 (TTAB 2013) (Board took judicial notice of entry for "tea" from ENCYCLOPEDIA BRITANNICA).

*Chem. Co.*, 1975 TTAB LEXIS 31, at \*13 (TTAB 1975) (finding the National Aeronautics and Space Administration (NASA) is a juristic person and institution).

To establish false suggestion of a connection with the USMC under Section 2(a), the Examining Attorney must prove:

(1) the term "Leathernecks" in Applicant's mark is the same as, or a close approximation of, the USMC's name or identity, as previously used by or identified with the USMC;

(2) the term "Leathernecks" in Applicant's mark would be recognized as such because it points uniquely and unmistakably to the USMC;

(3) the USMC is not connected to or otherwise affiliated with Applicant; and

(4) the USMC is of sufficient fame or reputation that, when the term "Leathernecks" is used to indicate membership in a motorcycle club, a connection with the USMC would be presumed.

*Notre Dame*, 703 F.2d at 1376-77 ("the *Notre Dame* test"). *See In re Pedersen*, 2013 TTAB LEXIS 618, at \*5 (TTAB 2013) (citing *Notre Dame* in an ex parte appeal context for "providing foundational principles for the current four-part test used by the Board to determine the existence of a false connection"). *See also Piano Factory Grp., v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1369 (Fed. Cir. 2021); *U.S. Olympic Comm. v. Tempting Brands Netherlands B.V.*, 2021 TTAB LEXIS 45, at \*22 (TTAB 2021); *In re Jackson Int'l Trading Co.*, 2012 TTAB LEXIS 246, at \*4-5 (TTAB 2012); *Buffett v. Chi-Chi's, Inc.*, 1985 TTAB LEXIS 80, 6-7 (TTAB 1985).

## A. Section 2(a) applies to collective membership marks

Applicant argues Section 2(a) does not apply to collective membership marks because the third and fourth elements of the *Notre Dame* test "require analysis of the Applicant's goods and services sold under the mark," and "no goods are sold and no

services are performed." App. Br., 6 TTABVUE 12-13. Likewise, Applicant argues the third and fourth elements of the *Notre Dame* test do not apply because Applicant's mark is used to indicate membership in an organization, not to indicate the commercial origin or quality of goods or services. *Id.*, 9-10.

We do not agree with Applicant's narrow reading of the *Notre Dame* test. Rather, we follow Section 4 of the Trademark Act, 15 U.S.C. § 1054, which provides for the registration of collective membership marks by applicants

> exercising legitimate control over the use of the marks sought to be registered, even though not possessing an industrial or commercial establishment, and when registered they shall be entitled to the protection provided in this chapter ...
>
> **Applications and procedures under this section shall conform as nearly as practicable to those prescribed for the registration of trademarks**.

15 U.S.C. § 1054 (emphasis added).

Nothing in the plain language of Section 4 of the Trademark Act exempts applications for collective membership marks from a Section 2(a) refusal. Indeed, the TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") § 1304.03 (2024) ("Examination of Collective Membership Mark Applications") states that such an application "must meet all the criteria for registration of other marks on the Principal Register," "the same standards are used as are applied to other types of marks" when determining the registrability of such an application on the Supplemental Register, and "[t]he examination of collective membership mark applications is conducted in the same manner as the examination of applications to register trademarks and service marks, using the same criteria of registrability." Here, Applicant is a

corporation that provides the service (in the nature of conferring a benefit) of membership in Applicant's motorcycle club, and permission for members to identify themselves as such by wearing the word "Leathernecks," displayed as . Accordingly, we do not accept Applicant's argument that Section 2(a) of the Trademark Act, and in particular, the third and fourth elements of the *Notre Dame* test, do not apply to collective membership marks. *Cf. Pierce-Arrow Soc'y v. Spintek Filtration, Inc.*, 2019 TTAB LEXIS 388, at \*14-24 (TTAB 2019) (applying all four elements of the *Notre Dame* test to a Section 2(a) claim brought by a collective membership organization); *cf. also Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493-94 (Fed. Cir. 1987) (association has standing to represent members' interests under Section 2(a)).

We address in turn the four elements of the *Notre-Dame* test.

### B. "Leathernecks" is a close approximation of the USMC's name or identity

MERRIAM-WEBSTER dictionary defines "Leatherneck" as "a member of the U.S. Marine Corps." December 16, 2021 Office Action, TSDR 1 (citing September 17, 2021 Administrative Response, TSDR 3).[5] "Inasmuch as dictionary definitions can be enough to demonstrate that an applied-for mark identifies a particular person or institution, the examining attorney has more than carried the initial burden of

---

[5] The September 17, 2021 Administrative Response forwarded to the Examining Attorney evidence submitted in a letter of protest. Although incorporated by reference into the December 16, 2021 Office Action, TSDR 1, citations to this evidence will be to the September 17, 2021 Administrative Response.

showing that [Leathernecks] is the same as or a close approximation of the name or identity previously used by another." *Pedersen*, 2013 TTAB LEXIS 618, at *6-9 (citing *In re White*, 2006 TTAB LEXIS 263, at *12 (TTAB 2006); *Cotter*, 1985 TTAB LEXIS 50, at *9).

Applicant does not address this element in its brief, and previously "concede[d] that Leatherneck is a nickname for a member of the USMC," March 21, 2022 Response to Office Action, TSDR 4, and "Leatherneck is used by the USMC. This element is not in dispute." October 18, 2022 Request for Reconsideration, TSDR 4.

## C. "Leathernecks" will be recognized as pointing uniquely and unmistakably to the USMC

In addition to the above dictionary definition of "Leatherneck," the Examining Attorney submitted the following evidence to support the Section 2(a) refusal:

- Wikipedia entry for "Leatherneck," which states: "Leatherneck is a military slang term for a member of the United States Marine Corp, or of the corps of Royal Marines." December 16, 2021 Office Action, TSDR 2;

- Screenshot from USMC Heritage Press International of "Common Terms for U.S. Marines" starting with

> Leatherneck: The nickname **Leatherneck** has become a universal moniker for a U.S. Marine. The term originated from the wide and stiff leather neck-piece that was part of the Marine Corps uniform from 1798 until 1872. This leather collar, called **The Stock**, was roughly four inches high and had two purposes. In combat, it protected the neck and jugular vein from cutlass slashes. On parade, it kept a Marine's head erect. The term is so widespread that it has become the name of the Marine Corps Association monthly magazine, **LEATHERNECK**.

May 25, 2023 Request for Reconsideration Denied, TSDR 2 (original emphasis in italics);

- Screenshot from VFW Veterans of Foreign Wars (vfw.org), November 10, 2022 press release titled "The Greatest of All Leathernecks" (subtitled "The VFW salutes all US Marines, past and present, and pays tribute to the Lt. Gen. Lejeune"):

> On this 247th Marine Corps birthday, the Veterans of Foreign Wars (VFW) salutes all Marines and pays tribute to the man who has been called the "greatest of all leathernecks," the 13th Commandant of the Marine Corps, Lieutenant General John Archer Lejeune.

*Id.*, TSDR 3;

- Screenshot from the U.S. Department of Defense website (usa.gov) showing truncated search results for the term "Leathernecks." *Id.*, TSDR 4;

- Screenshot from the Marine Corps Association webpage (mca-marines.org) with an image of and link to the current issue of "Leatherneck" magazine:

> Keep current on issues affecting the Corps today and stay connected with your community and our history through our iconic publications, Leatherneck – Magazine of the Marines … .

*Id.*, TSDR 5-6; and

- Screenshot from the Boot Camp & Military Fitness Institute (bootcampmilitaryfitnessinstitute.com) displaying a November 2, 2022 article by Andrew Marshall titled "What is a Leatherneck?," stating "Leatherneck is a military slang term for a member of the United States Marine Corps, or of the Corps of Royal Marines," and discussing the origin of the nickname for the USMC and the British Royal Marines.

*Id.*, TSDR 7.

We also consider a screenshot of a December 23, 2002 article about Applicant by Sgt John Neal titled "Riding With That Good Ol' Marine Corps Spirit," still posted on the USMC website. March 21, 2022 Response to Office Action, TSDR 60-62. The article begins with a summary of an interaction between a member of Applicant and the then-Commandant of the USMC:

> When Rubin and a group of fellow motorcycle enthusiasts who call themselves The Leathernecks attended a Marine Corps birthday ceremony at Times Square in 2001, Commandant Gen. James L. Jones was impressed by the collection of motorcycles and former Marines who rode them.
>
> "He said he didn't even know he had a motorcycle gang," said Rubin, a stocky man with a close-cropped goatee and high-and-tight haircut. "That's where I had to correct him and tell him we're not a gang, we're a club."

*Id.*, TSDR 60-61.

The article reports favorably on Applicant and its philanthropic activities to benefit children and veterans, concluding with the following:

> Regardless of one's military status, the Leathernecks seek to serve. The Marine Corps provided transformation for these men and women from civilian youth into Marines. The transformation continued when they left the Corps and returned to society as better citizens. According to one member, the motorcycle club serves as a transformation point once again.
>
> "It's a transition from service to country to service to community."

*Id.*, TSDR 62.

Applicant contends the term "Leathernecks" does not point uniquely and unmistakably to the USMC because it also is a slang term referring to the British Royal Marines, there are several third-party registrations for LEATHERNECK marks, and there are "many companies not connected with the USMC" who "are using the Leatherneck name without a registered trademark." App. Br., 6 TTABVUE 10-11.

The requirement that "Leathernecks" point uniquely and unmistakably to the USMC does not mean "Leathernecks" must be exclusively used to identify the USMC. *Jackson Int'l Trading*, 2012 TTAB LEXIS 246, at *6; *Hornby v. TJX Cos.*, 2008 TTAB LEXIS 19, at *55 (TTAB 2008). Rather, the question is whether, as used to identify membership in Applicant's motorcycle club, the relevant public would view the term "Leathernecks" as pointing only to the USMC, or whether they would perceive it to have a different meaning. *In re Nieves & Nieves LLC*, 2015 TTAB LEXIS 11, at *13-14 (TTAB 2015) ("[W]e examine the evidence of record to determine whether it establishes that Applicant's mark ROYAL KATE would be understood by the relevant public as identifying Kate Middleton."); *Hornby*, 2008 TTAB LEXIS 19, at *52 (finding TWIGGY pointed uniquely and unmistakably to the plaintiff, who was recognized as a famous British model, and that the dictionary meaning of "twiggy" as resembling or abounding in twigs would not be the consumers' perception of the name for respondent's children's clothing). For purposes of a collective membership mark, the relevant public "would not consist of 'purchasers,' but rather those persons or groups of persons for whose benefit the membership mark is displayed." *Pierce-Arrow*, 2019 TTAB LEXIS 388, at *29 (quoting *Carefirst of Md. Inc. v. FirstHealth of the Carolinas Inc.*, 2005 TTAB LEXIS 406, at *72 (TTAB 2005)). Here, the relevant public comprises, at minimum, current and prospective members of Applicant, including individuals and entities associated with the U.S. military.

Given the dictionary definition of "Leatherneck" as a member of the USMC, and the foregoing Internet evidence, including the 2002 article currently posted on the

USMC website demonstrating that the highest-ranking officer of the USMC immediately recognized the term "Leathernecks" as pointing directly to the USMC, we find the relevant public would understand the term "Leathernecks" to point uniquely and unmistakably to the USMC, especially when all of Applicant's present members "are active duty or honorably discharged U.S. Marines, or U.S. Navy Corpsman who have served with the Fleet Marine Force." March 21, 2022 Response to Office Action, TSDR 7. While the term "Leatherneck" may also refer to the British Royal Marines, in the context of membership in an American motorcycle club, this reference would not overshadow the other record evidence listed above, all of which points to the USMC.

Moreover, as demonstrated and explained below, the overall appearance of

Applicant's mark further supports a finding that the term "Leathernecks" points uniquely and unmistakably to the USMC, and the relevant public would understand the term in that manner.

### 1. USMC registrations

The record includes ten registrations, identifying the USMC as the owner, for marks that have significant visual similarities to, and the same color scheme as, Applicant's mark, and feature terms that are associated with the USMC such as IWO JIMA, SEMPER FIDELIS and QUANTICO, for goods identified as "embroidered

emblems; embroidered patches for clothing."[6] September 17, 2021 Administrative Response, TSDR 6-11, 13-16. All of the USMC marks are described as consisting of "a red banner design with curved sides top and bottom, with a gold border, and containing" their respective words (e.g., IWO JIMA) "in gold," and they all claim the colors gold and red as a feature of the mark. One such example (for IWO JIMA) is reproduced below:



---

[6] We take judicial notice from Dictionary.com Unabridged, based on THE NEW DICTIONARY OF CULTURAL LITERACY, 3rd ed. (2005), accessed March 4, 2024, that "Iwo Jima" is "an island in the Pacific Ocean, taken from the Japanese by United States Marines near the end of World War II after a furious battle." And we take judicial notice from Dictionary.com Unabridged, based on THE RANDOM HOUSE DICTIONARY (2024), also accessed March 4, 2024, that "Quantico" is "a U.S. Marine Corps base and development and education command in NE Virginia, NE of Fredericksburg on the Potomac River," and "Semper Fidelis" means "always faithful: motto of the U.S. Marine Corps." The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format or have regular fixed editions. *In re Cordua Rests. LP*, 2014 TTAB LEXIS 94, at *6 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594 (Fed. Cir. 2016).

The ten registrations reside on the Supplemental Register and have been maintained. In addition to the three listed above, the others include the following wording: 29 PALMS, CAMP LEJEUNE, CAMP PENDLETON, CHERRY POINT, DEVIL DOG, OKINAWA and PARRIS ISLAND. September 17, 2021 Administrative Response, TSDR 6-11, 13-16.

An eleventh registration, which included the wording FORCE RECON, was cancelled, and has been given no further consideration. *Id.*, TSDR 12. Likewise, the three registrations identifying the USMC as the owner for the word LEATHERNECKS for various goods, submitted with the April 21, 2022 Final Office Action, TSDR 2-7, were cancelled, and have been given no further consideration. The aforementioned registrations were cancelled under Section 8 of the Trademark Act, 15 U.S.C. § 1058, for failure to file the requisite maintenance documents. A cancelled registration is only evidence that the registration issued and it does not carry any of the legal presumptions under Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b). *See Bond v. Taylor*, 2016 TTAB LEXIS 218, at *18 (TTAB 2016); *In re Kysela Pere et Fils Ltd.*, 2011 TTAB LEXIS 70, at *7 (TTAB 2011) ("'dead' or cancelled registrations have no probative value at all.").

## 2. Applicant's specimens submitted with the application

We also consider Applicant's specimens, a photograph of "four members of the motorcycle club wearing the mark on their vests,"



and a mockup of a "vest worn by members, with specifications for placement of the LEATHERNECKS special form mark,"



**Before Starting: Center Eagle, Globe and Anchor on Vest**

A: 3 3/4 " from the Top of Top Rocker to Top of Semper Fi Banner
B: 16" from Top of Top Rocker to Bottom of Bottom Rocker
C: 3/4" down from Anchor Pommel and 3/4" over from Globe

Applicant's use of "Leathernecks" in gold in an arc on a scarlet background with a gold border on a rocker patch affixed to the upper section of the vest, above other indicia of the USMC including the "Eagle, Globe and Anchor" emblem and the letters "USMC," reinforces that the relevant public will recognize the term "Leathernecks" in Applicant's mark  as pointing uniquely and unmistakably to

the USMC.[7] *Cf. Herrick*, 2009 TTAB LEXIS 428, at *7 ("Moreover, applicant's use of a seal that is nearly identical to the former seal of the United States Customs Service reinforces that its mark will be identified with the government agency."); *In re N.V. Organon*, 2006 TTAB LEXIS 206, at *20 (TTAB 2006) (material obtained from an applicant's website is acceptable as competent evidence to show the probable impression the mark will make on relevant consumers).

### 3. Third-party use and registration evidence

Applicant's evidence of thirteen third-party uses and seven subsisting third-party registrations of the term "Leatherneck" in the singular, plural or possessive form for

---

[7] One paragraph in the 2002 article posted on the USMC website plainly states Applicant uses the term "Leathernecks" with the red and gold EGA (Eagle, Globe and Anchor) to show pride in the club and the USMC:

> Brown or black (though preferably the latter), crisp or beaten soft with years of use (the biker version of "old sale," if you will) the jackets help keeps [sic] them warm on late-autumn rides, but also serve as an identifying mark as to who they are and where they've been. Patches and pins cover nearly every inch of black. Each one holds some sort of significance, whether it is in memory of a comrade, a memento of a ride, or a salute to Chesty Puller. **But the one that sticks out is the giant red and gold Eagle, Globe and Anchor on the back: the colors of the Leathernecks. It is what unites this motley crew of former Marines and strengthens their pride in their organization and the Marine Corps.**
>
> **"It's putting the EGA on again," said Rubin. "It's the pride, the respect we get."**

March 21, 2022 Response to Office Action, TSDR 62 (emphasis added).

In addition, the record includes screenshots of the Marine Corps Association logo, which incorporates the EGA. *See* May 25, 2023 Request for Reconsideration Denied, TSDR 5-6, showing the logo on the Association's website, and on banners and a table cover at the "2023 MCA Ammo Tech Awards Ceremony." The screenshots also show the EGA on the cover of the Marine Corps Gazette. *Id.*, TSDR 5.

disparate goods and services unrelated to indicating membership in a motorcycle club does not alter our finding that Applicant's use of "Leathernecks" in Applicant's mark

reinforces that the relevant public will recognize "Leathernecks" as pointing uniquely and unmistakably to the USMC.[8]

To begin, we reject Applicant's unsupported argument that none of the third parties are affiliated with or authorized by the USMC. *See Cai v. Diamond Hong, Inc.,* 901 F.3d 1367, 1371 (Fed. Cir. 2018) (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005)); *see also In re U.S. Tsubaki, Inc.*, 2014

---

[8] Third-party uses: Leatherneck Automotive Repair (auto repair shop); Leatherneck Backcountry Fishing (fishing expeditions); Leatherneck Classic (bowling tournament); Leatherneck Heating & Cooling (HVAC and AC services); Leatherneck Landscape and Design (landscapers); Leatherneck Media (video production); Leatherneck Plumbing (plumbers); Leatherneck Precision Machine (metal shop); Leatherneck Saddlery (saddle makers); Leatherneck Shooters (firearms training); Leatherneck Tree Service (tree trimming); Leatherneck's Painting & Remodeling (house painting). March 21, 2022 Response to Office Action, TSDR 21-59. Western Illinois University also uses "Leathernecks" as a team name/university nickname on shirts, stickers/decals and bandanas sold at the University's bookstore. October 18, 2022 Request for Reconsideration, TSDR 67-72.

Third-party registrations: LEATHERNECKS (Reg. No. 4086364), identifying the Board of Trustees of Western Illinois University as the owner, for clothing and educational services and sporting events; LEATHERNECK (Reg. No. 4126713) for cigars and tobacco; LEATHERNECK (Reg. No. 4171735) for knives; LEATHERNECKS TATTOO (Reg. No. 4530182) for tattoo services; LEATHERNECK SIMULATIONS (Reg. No. 5759093) for flight simulator software; LEATHERNECK HARDWARE (Reg. No. 5799968) for door hardware; and LEATHERNECK (Reg. No. 2300146) for beer. March 21, 2022 Response to Office Action, TSDR 12-15, 18-20. An eighth third-party registration (LEATHERNECK REALTY (Reg. No. 5016475) for real estate related services, *id.*, TSDR 16-17) was cancelled under Section 8 of the Trademark Act for failure to file the requisite maintenance documents, and has been given no further consideration. *See Bond v. Taylor,* 2016 TTAB LEXIS 218, at *18; *In re Kysela Pere et Fils Ltd.,* 2011 TTAB LEXIS 70, at *7 ("'dead' or cancelled registrations have no probative value at all.").

TTAB LEXIS 88, at \*13 (TTAB 2014) (finding there was no proof to support the statements in the record by counsel).

But it would not matter even if none of the third-party users or registrants were affiliated with or authorized by the USMC. "Ultimately, 'the concern in § 2(a) cases involving a false suggestion of a connection, unlike cases under § 2(d) which are concerned with protection of the public from confusion, is protection of persons and institutions from unauthorized exploitation of their personas." *U.S. Olympic Comm.*, 2021 TTAB LEXIS 45, at \*33 (quoting *Pedersen*, 2013 TTAB LEXIS 618, at \*36) (citing *Bridgestone/Firestone*, 245 F.3d at 1363). Whether the relevant public is exposed or well-accustomed to third-party use or registration of "Leathernecks" in the singular, plural or possessive form with goods and services that are unrelated to Applicant's motorcycle club is insufficient to show that the term "Leathernecks" in Applicant's mark, when used to identify membership in Applicant's motorcycle club, does not point uniquely and unmistakably to the USMC. *See Pedersen*, 2013 TTAB LEXIS 618, at \*31-32 (finding consumer exposure to third-party use of LAKOTA on goods and services unrelated to the applicant's goods insufficient to show applicant's use of LAKOTA did not point uniquely to the Lakota people); *Hornby*, 2008 TTAB LEXIS 19, at \*55-56 (finding evidence of third-party registrations of the term "TWIGGY" for goods unrelated to children's clothing had "no probative value"); *cf. NPG Recs., LLC v. JHO Intell. Prop. Holdings*, 2022 TTAB LEXIS 298, at \*24 (TTAB 2022) (finding the applicant's evidence of three third-party registrations for items

unrelated to the goods in the applicant's application insufficient to show that PURPLE RAIN did not point uniquely to the opposer).

Also, as to the third-party registrations, the Board is not bound by decisions of Examining Attorneys to register prior marks. To the contrary, the USPTO must decide each application on its own merits. *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2011) ("The Board must decide each case on its own merits. *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1127 (Fed. Cir. 1985). Even if some prior registrations had some characteristics similar to [Applicant's] application, the PTO's allowance of such prior registrations does not bind the Board or this court.").

On this record, we agree with the Examining Attorney that Applicant's use of "Leathernecks" in its mark

> clearly points back to the Marines, which is Applicant's intent. … Basically, Applicant is using its mark with the intent of showing an affiliation with [the] USMC despite having no official affiliation with them. Although private users may consider themselves to be "LEATHERNECKS" in the United States, only the actual USMC has a protectable interest in being designated the LEATHERNECKS.

Ex. Atty. Br., 8 TTABVUE 5.

### D. The USMC is not connected to or otherwise affiliated with Applicant

Applicant seeks a collective membership mark whose sole purpose is to indicate the user of the mark is a member of Applicant's motorcycle club. Applicant does not argue in its brief that it is connected to or otherwise affiliated with the USMC, there

is no evidence to support any such connection or affiliation, and we find none.[9] The continued presence of a 2002 article about Applicant posted on the USMC website (March 21, 2022 Response to Office Action, TSDR 60-62), shows the USMC is aware of Applicant and may even approve of Applicant's philanthropic activities, but it does not mean Applicant is connected to the USMC in the manner contemplated by the third element of the *Notre-Dame* test, for instance, through a licensing arrangement.

E. **The USMC is of sufficient fame or reputation that, when the term "Leathernecks" in Applicant's mark is used to indicate membership in a motorcycle club, a connection with the USMC would be presumed**

Applicant argues there is no evidence showing the USMC is involved in motorcycle clubs, and no evidence that members of Applicant's organization, all of whom are U.S. Marines and U.S. Navy Corpsman, would presume the USMC is operating a motorcycle club. App. Br., 6 TTABVUE 13-15. However, the test is not whether the USMC would be expected to run a motorcycle club. The test is whether the USMC's fame and reputation is of such a nature that a connection with the USMC would be presumed in the context of indicating membership in a motorcycle club bearing the name "Leathernecks." *In re White*, 2004 TTAB LEXIS 529, at *22-23 (TTAB 2004).

As mentioned above, the USMC is a separate service within the U.S. Department of the Navy. The USMC is almost 250 years old, and pursuant to an order issued by Lt. Gen. Lejeune, known as "The Greatest of all Leathernecks," its birthday has been

---

[9] For the reasons discussed above, we do not further consider Applicant's argument that the third element of the *Notre Dame* test is inapplicable to a Section 2(a) refusal involving an application for a collective membership mark. In its brief, Applicant raised no other argument about this element.

celebrated for over a century. Lt. Gen. Lejeune's order provides that every year (since 1921), his words are read to the command proclaiming: "The record of our corps is one which will bear comparison with that of the most famous military organizations in the world's history"; "In every battle and skirmish since the birth of our corps, Marines have acquitted themselves with the greatest distinction, winning new honors on each occasion until the term 'Marine' has come to signify all that is highest in military efficiency and soldierly virtue"; and "This high name of distinction and soldierly repute we who are Marines today have received from those who preceded us in the corps." May 25, 2023 Request for Reconsideration Denied, TSDR 3. The Marine Corps Association, the USMC's more than 100-year-old professional organization, is large and active enough to distribute two publications: Marine Corps Gazette, and Leatherneck – Magazine of the Marines. *Id.*, TSDR 5-6. The USMC has a mascot, a band and a national war memorial. *Id.*, TSDR 2.

Here, in the context of a motorcycle club that uses the term "Leathernecks," a connection with the USMC would be presumed for several reasons. First, Applicant's name, "Leathernecks," is a nickname adopted by the USMC and recognized by the relevant public to refer to the USMC.[10] Second, Applicant's members affix the mark to their vests, above other USMC indicia (the EGA, which Applicant refers to as the "Semper Fi" banner, and the letters "USMC"). Third, Applicant's display of the

---

[10] As noted above, the relevant public are, at minimum, current and prospective members of Applicant, including individuals and entities associated with the U.S. military.

collective membership mark in the colors gold and scarlet closely resembles the marks in ten registrations with the USMC listed as the owner where the marks are for gold and red rocker patches with other U.S. Marine indicia, all of which are meant to be affixed to clothing (including vests and jackets worn by motorcycle clubs). And fourth, Applicant's entire membership presently consists of active duty and honorably discharged U.S. Marines and U.S. Navy Corpsman. Indeed, creating a connection with the USMC appears to be Applicant's intent in adopting "Leathernecks" as the name of its club. *See Herrick*, 2009 TTAB LEXIS 428, at \*11 ("Moreover, based on applicant's use of a virtually identical seal of the former United States Customs Service in connection with applicant's legal services 'concentrating its legal practice in U.S. Customs law,' we may draw an inference that applicant intends to create a connection with United States Customs and Border Protection.") (internal citation and quotations omitted).

For these reasons, we find the USMC is of sufficient fame or reputation that, when the term "Leathernecks" in Applicant's mark is used to indicate membership in a motorcycle club, a connection with the USMC would be presumed.

## II.   Conclusion

Applicant's mark falsely suggests a connection to the USMC, a juristic person or institution within the meaning of Trademark Act Section 45. The term "Leathernecks" in the mark is a recognized nickname for, and points

uniquely and unmistakably to, the USMC. The relevant public would understand the term "Leathernecks" in this manner, and would erroneously presume Applicant is affiliated with or connected to the USMC. Applicant's use of the term "Leathernecks" in gold letters on a scarlet background arc that closely resembles the ten registered marks with the USMC listed as the owner, all of which are used as clothing patches, along with Applicant's use of other USMC indicia as patches affixed to vests worn by Applicant's members, reinforce that Applicant's mark will be identified with the USMC. Because of the USMC's fame and reputation, the relevant public would mistakenly believe Applicant has a connection with the USMC should the mark be used to indicate membership in a motorcycle club, especially one whose entire present membership are active duty or honorably discharged U.S. Marines or U.S. Navy Corpsman who have served with the Fleet Marine Force.

**Decision**: The refusal to register Applicant's collective membership mark under Trademark Act Section 2(a) is affirmed.